Case Nos. 22-2675, 22-2676, 22-2677, 22-2678, 22-2679, & 22-2680

# *In the United States Court of Appeals for the Third Circuit*

APEX CONSTRUCTION CO. INC.,
BLUEWATER CONSTRUCTION INC.,
MSI BUILDING SUPPLIES INC.,
UNITED CORPORATION,
IMPEX TRADING INTERNATIONAL INC.,
B&B MANUFACTURING INC.,
Appellants/Plaintiffs,
v.
UNITED STATES VIRGIN ISLANDS,
Appellee/Defendant.

ON APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
Case Nos. 3:21-cv-39, 3:21-cv-40, 3:21-cv-41, 3:21-cv-43, 3:21-cv-44, & 3:21-cv-52
Hon. Robert A. Molloy, District Judge, Presiding

_____

**BRIEF FOR APPELLANTS
WITH APPENDIX VOL. I (pages 1-49)**

_____

DiRuzzo & Company                    Joseph A. DiRuzzo, III
401 East Las Olas Blvd., Suite 1400  jd@diruzzolaw.com
Fort Lauderdale, FL 33301            Daniel M. Lader
954.615.1676 (Office)               dl@diruzzolaw.com
957.827.0340 (Fax)

*Counsel for the Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES............................................................iii

INTRODUCTION...................................................................... 1

STATEMENT OF SUBJECT MATTER & APPELLATE JURISDICTION ............ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................... 1

STATEMENT REGARDING ORAL ARGUMENT ................................. 2

STATEMENT OF RELATED CASES & PROCEEDINGS ...................... 2

STATEMENT OF THE CASE ....................................................... 2

    I.   BACKGROUND - *REEFCO* EXCISE TAX LITIGATION ............................. 2

    II.  PROCEDURAL HISTORY OF THE CASES BELOW ..................................... 3

        A.  Evidentiary Hearing............................................................ 6

        B.  Report & Recommendation .................................................. 9

    III. RULING PRESENT FOR REVIEW........................................................ 11

SUMMARY OF THE ARGUMENT ................................................ 13

STATEMENT OF THE STANDARD & SCOPE OF REVIEW ........................... 15

ARGUMENT............................................................................ 16

    I.   TAX COMITY IS INAPPLICABLE IN THIS CASE........................................ 16

    A.  Tax Comity Does Not Apply in the Virgin Islands ...................... 16

    B.  If Tax Comity Applies in General, it Should Not Apply Here .................... 18

        1.  Tax Comity Should Not Apply Because of Reefco .................................. 18

        2.  Tax Comity Should Not Apply Because the Relief Sought is Only Monetary (i.e., Not Injunctive or Declaratory)........................................... 19

        3.  Superior Court does not provide a plain, adequate, and Complete Remedy .................................................................................. 24

        4.  There is No Guarantee of Repayment........................................ 30

    II.  THE GVI SHOULD BE ESTOPPED FROM RELITIGATING *REEFCO* ...................... 34

CONCLUSION ................................................................................................ 41

CERTIFICATE OF BAR MEMBERSHIP ..................................................... 42

CERTIFICATE OF COMPLIANCE RE: WORD COUNT .................................. 42

CERTIFICATE OF COMPLIANCE RE: VIRUS CHECK .................................... 43

CERTIFICATE OF COMPLIANCE RE: E-BRIEF ............................................. 43

CERTIFICATE OF SERVICE ......................................................................... 43

COMPUTATIONAL ADDENDUM ................................................................ 44

JOINT APPENDIX VOL. I – TABLE OF CONTENTS ...................................... 46

# TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*, 449 U.S. 90 (1980) ..................................................34, 35

*American Resort Development Association v. Government of the Virgin Islands*, 848 F. App'x 79 (3d Cir. 2021) ..................................................... 10, 16, 17

*Ashe v. Swenson*, 397 U.S. 436 (1970) ......................................................... 34

*Ass'n of New Jersey Rifle & Pistol Clubs Inc. v. Att'y Gen. New Jersey*, 974 F.3d 237 (3d Cir. 2020) ......................................................................... 16

*Birdman v. Off. of the Governor*, 677 F.3d 167 (3d Cir. 2012) ..................................... 17

*Bluebeard's Castle, Inc. v. Gov't of the Virgin Islands*, 321 F.3d 394 (3d Cir. 2003) ...... 16

*Brown v. Felsen*, 442 U.S. 127 (1979) .......................................................... 35

*Chang v. Child.'s Advoc. Ctr. of Del. Weih Steve Chang*, 938 F.3d 384 (3d Cir. 2019).. 15

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)..............4, 19

*Cooper v. Comm'r*, 718 F.3d 216 (3d Cir. 2013) .......................................... 17

*Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1 (2015)............................................. 21

*Edwards v. HOVENSA, LLC*, 497 F.3d 355 (3d Cir. 2007) ...................................... 16

*Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981)....................22, 23

*Garrett v. Bamford*, 538 F.2d 63 (3d Cir. 1976) ........................................... 33

*Great Bay Condo. Owners Ass'n, Inc. v. Gov't of Virgin Islands*, 2018 WL 4690372 (D.V.I. Sept. 28, 2018)................................................................................. passim

*Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943) .............................. 19

*Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.*, 768 F.2d 1558 (11th Cir. 1985) ..................................................................................... 38

*Hibbs v. Winn*, 542 U.S. 88 (2004) ......................................................21, 24

*Intermountain Ins. Serv. of Vail, LLC v. Comm'r*, 134 T.C. 211 (T.C. 2010) ............... 40

iii

*Karns v. Shanahan*, 879 F.3d 504 (3d Cir. 2018)................................................35, 37

*Kuykendall v. Hart*, 70 V.I. 574 (V.I. Super. 2019)......................................................26

*Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010)..............................................20, 21, 23

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) ...........................................1, 18

*Montana v. United States*, 440 U.S. 147 (1979)..............................................................34

*Morton v. Testamark*, 2022 WL 17669172 (D.V.I. Dec. 14, 2022) ............................26

*Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582 (1995)...............23

*Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519 (3d Cir. 2002)
.........................................................................................................................38

*New Hampshire v. Maine*, 532 U.S. 742 (2001).......................................................40, 41

*Ocwen USVI Services, LLC. v. The United States Virgin Islands*, case no. 3:22-cv-66 (D.V.I.)
.........................................................................................................................32

*Pan Am. World Airways, Inc. v. Gov't of the Virgin Islands*, 459 F.2d 387 (3d Cir. 1972)
.........................................................................................................................16

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ......................................... 35, 36, 41

*Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971).............................................23, 37

*Reefco Servs., Inc. v. Gov't of Virgin Islands*, 2018 WL 4690366 (D.V.I. Sept. 28, 2018).
.........................................................................................................................2

*Reefco Servs., Inc. v. Gov't of Virgin Islands*, 830 F. App'x 81 (3d Cir. 2020) ........1, 3, 19

*Trade Waste Mgmt. Ass'n, Inc. v. Hughey*, 780 F.2d 221 (3d Cir. 1985)......................39

*United States v. Dalm*, 494 U.S. 596 (1990) ................................................................24

*United States v. Mendoza*, 464 U.S. 154 (1984)............................................... 38, 39, 40

*United States v. Stauffer Chem. Co.*, 464 U.S. 165 (1984)................................ 34, 36, 41

*Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017)............................................25

iv

*Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App' x 527 (3d Cir. 2015) ..........
............................................................................................................... 11, 22

## Statutes

26 U.S.C. § 934 ........................................................................................... 18
28 U.S.C. § 41 ............................................................................................. 40
28 U.S.C. § 1291 ........................................................................................... 1
28 U.S.C. § 1331 ........................................................................................ 1, 5
28 U.S.C. §§ 2201-02 ................................................................................... 20
48 U.S.C. § 1397 ......................................................................................... 17
48 U.S.C. § 1612(a) ................................................................................. 1, 17
3 V.I.C. § 179 ............................................................................................. 32
5 V.I.C. § 31(b)(1) & (2) ............................................................................ 27
5 V.I.C. § 31(b)(2) ...................................................................................... 29
5 V.I.C. § 31(b)(4) ...................................................................................... 29
29 V.I.C. § 713b .......................................................................................... 18
33 V.I.C. § 1692 .......................................................................................... 23
33 V.I.C. § 681(a) ......................................................................................... 8

## Other Authorities

Committee on Rules and Judiciary, Hearing on Act 8468 (Jul. 6, 2021) ..... 27, 28, 29
Government House Weekly Press Briefing/ COVID-19 Update (Feb. 28, 2022) .... 32

## Rules

Fed. R. Evid. 201 .................................................................................. 25, 27

## INTRODUCTION

A "basic principle of justice [is] that like cases should be decided alike[.]" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005).

This case stems from this Court's decision in *Reefco Servs., Inc. v. Gov't of Virgin Islands*, 830 F. App'x 81 (3d Cir. 2020), which affirmed the District Court's decision holding that the Government of the Virgin Islands ("GVI") violated the Commerce Clause and providing the taxpayer with a refund of excise taxes illegally collected. The Appellants in this case seek the same relief provided to Reefco, *viz.* a refund of the excise taxes they paid while the GVI acted in violation the Commerce Clause.

## STATEMENT OF SUBJECT MATTER & APPELLATE JURISDICTION

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291; the District Court of the Virgin Islands had jurisdiction pursuant to 48 U.S.C. § 1612(a), 28 U.S.C. § 1331.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Does the tax comity doctrine apply in the first instance in the Virgin Islands and, if it does, is there an exception to tax comity in this case?

2.    Does collateral estoppel apply to the GVI?

## STATEMENT REGARDING ORAL ARGUMENT

Given the interplay between this Court's decision in *Reefco,* tax comity, and collateral estoppel, the Appellants contend that oral argument would facilitate the resolution of these consolidated cases.

## STATEMENT OF RELATED CASES & PROCEEDINGS

Other than the cases below, there are no related cases pending before this Court or any other court.

## STATEMENT OF THE CASE

### I.    BACKGROUND - *REEFCO* EXCISE TAX LITIGATION

In *Reefco Servs., Inc. v. Gov't of Virgin Islands*, 2018 WL 4690366 (D.V.I. Sept. 28, 2018) ("*Reefco I*") the District Court of the Virgin Islands held that the administration of the Virgin Islands excise tax statute – 33 V.I.C. § 42 ("Section 42") – violated the Commerce Clause, that any excise tax assessed under Section 42 was improperly assessed, and that Reefco was entitled to a refund of those taxes. *See id.* at *7.  The reason for this holding was that the GVI continued to ignore legislative amendment(s) to Section 42 and continued to implement the pre-1984 statute that this Court had held was invalid under the Commerce Clause.  *Id.* at *6.  Thus, the excise tax was levied on certain items that are imported into the Virgin Islands but not on similar items that are manufactured in the Virgin Islands, which amounted to "prohibited economic protectionism." *Id.* *7.

The GVI appealed *Reefco* to this Court, which affirmed in substantial part.  *See Reefco Servs., Inc. v. Gov't of Virgin Islands*, 830 F. App'x 81 (3d Cir. 2020) ("*Reefco II*"). In *Reefco II* this Court tersely noted that

> the excise tax was not assessed on local manufacturers from 1984 until at least as recently as February 2019. That failure is nothing short of a blatant "preference for domestic commerce over [interstate] commerce." Local manufacturers were afforded a tax break not available to foreign and domestic importers. *The resulting violation of the Commerce Clause is obvious and the GVI's claims to the contrary do not merit further discussion.*

*Id.* at 85 (citations omitted, emphasis added).

Ultimately, this Court affirmed *Reefco I*'s central holding that Section 42, as interpreted and enforced by the GVI, violated the Commerce Clause, and affirmed the award of declaratory, injunctive, and monetary relief.  *Id.* at 83.

## II.    PROCEDURAL HISTORY OF THE CASES BELOW

The Taxpayer-Appellants, as the Plaintiffs below, were aware of the *Reefco* litigation and, upon the issuance of this Court's opinion in *Reefco II*, filed substantially similar lawsuits bringing claims for refunds of the excise taxes that they paid to the GVI during the years where the GVI was interpreting and enforcing Section 42 in an

unconstitutional manner.  However, unlike *Reefco*, the Appellants below only sought monetary relief (i.e., they did not request either declaratory or injunctive relief).[1]

The GVI moved to dismiss (Doc. # 7),[2] arguing that the Appellants lacked standing and failed to plead a cognizable constitutional injury.  Doc. # 8 at 3.  The GVI also argued that tax comity required that the District Court decline to exercise jurisdiction so that the cases be determined by the Virgin Islands Superior Court. Doc. # 8 at 7.

The Appellants opposed (Doc. # 10), arguing that federal courts have "virtually unflagging obligation ... to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The Appellants argued that binding Third Circuit precent foreclosed tax comity and, in any event, that tax comity was inapplicable under the circumstance, asserting that, because of the GVI's current troubled financial situation, a refund action was not a plain, adequate, and complete remedy.  Indeed, the District Court had already determined the same another taxation case:

---

[1] The amounts at issue are as follows:  Apex — $35,002.49; Bluewater — $41,529.69; MSI — $665,743.83; United Corp. — $523,554.18; Impex — $128,210.86; B&B — $116,260.95 (totaling $1,510,292.00). *See* Apdx-016 (Op. at 4, fn. 3).

[2] "Doc. #" refers to the docket entries before the District Court in B&B (case no. 3:21-cv-52) as the Magistrate Judge required all filings to be in that specific case number; "Apdx" refers to the Appendix.

> Under these circumstances, the Court is not satisfied that an adequate remedy is available in the local courts. The Commissioner of Finance has admitted that the Virgin Islands is in such dire financial straits that the payment of tax refunds is subject to the availability of funds and delayed for years. In addition, a judicial decision invalidating the timeshare fee could give rise to significant liability for the Virgin Islands government. Furthermore, no binding policy or law has been identified that would require the payment of tax refunds to be the first priority for the treasury.

*Great Bay Condo. Owners Ass'n, Inc. v. Gov't of Virgin Islands*, 2018 WL 4690372, at *20 (D.V.I. Sept. 28, 2018) (footnotes omitted).

Accordingly, as in *Great Bay*, the Appellants advanced two independent factual grounds why tax comity should not apply: (1) that the condition of the local courts' dockets guaranteed lengthy litigation; and (2) that, even if a suit is successful, there is no guarantee of repayment due to the GVI's precarious financial situation.  Doc. # 10 at 13-20.  Thus, as the District Court did in *Reefco I*, and this Court did in *Reefco II*, the trial court needed to exercise federal question jurisdiction, *see* 28 U.S.C. § 1331, over the Appellants' refund claims and order the GVI to refund excise taxes that were applied in an unconstitutional manner.

The District Judge consolidated the various cases and referred the GVI's motions to dismiss for a Report and Recommendation (R&R").  Doc. # 14.

### A.    Evidentiary Hearing

The Magistrate held an evidentiary hearing on February 17, 2022.  Apdx-176.

The purpose of the evidentiary hearing was to ascertain whether the factual conditions

that informed the trial court's conclusion in *Great Bay* remained, i.e., that the Virgin

Islands local level courts do not provide a plain, adequate, and complete remedy.

In advance of the evidentiary hearing, the Appellants moved the trial court to

take judicial notice of the 2008-2020 "annual report of the state of the court system

and judiciary of the U.S. Virgin Islands." Apdx-153.  The trial court took judicial

notice of the annual reports.  Apdx-290 (Tr. 115:11-14).

At the evidentiary hearing, the testimonies of GVI employees were as follows.

*Darien Lon Wheatley.*  There are two judgment funds, one for over $25,000

judgments, one below $25,000.  Apdx-183 (Tr. 8:12-17).  Judgments for tax refund

cases are not (and have never) been paid out of the judgment fund.  Apdx-184 (Tr.

9:20-25); Apdx-193 (Tr. 18:18-21, 22-24).  Settlements are also paid out of the

judgment fund.  Apdx-187 (Tr. 12:7-19).

The appropriations for the $25k+ judgment fund was $350k for fiscal years

2022-2020, and the appropriations for the less than $25k judgment fund was $150k

for fiscal years 2022-2000.  Apdx-194 (Tr. 19:24-20:2).  If there is excess money in

either of the judgment funds at the end of the fiscal year, the money "goes back into

the treasury." Apdx-195 (Tr. 20:20-23).  If there are insufficient funds to pay all the judgments/settlements from the judgment fund, the Virgin Islands Department of Justice ("VIDOJ") has to wait until the next fiscal year to pay the judgments/settlements.  Apdx-197 (Tr. 22:1-10).

If the Appellants in this case were successful in obtaining judgments, the judgment fund would not be used to pay those judgments.  Apdx-198 (Tr. 23:11-14). Wheatley admitted that there have been occasions where the GVI has not paid settlements and judgments on time.  Apdx-199 (Tr. 24:18-25).

*Jenifer C. O'Neal:*    All tax revenues go into the general fund.  Apdx-226 (Tr. 51:17).  The reserve fund account (3 V.I.C. § 179) is merely "a fund on paper. There's no, there is no actual cash anywhere."  Apdx-223 (Tr. 48:15-16).  The reserve fund is where the 10% set aside should be. Apdx-223 (Tr. 48:17-19).  The 10% set aside is not put into a separate count or an actual reserve.  Apdx-225 (Tr. 50:13-18).  As of April 2020, "the government has had chronic cash flow challenges for many years." Apdx-1015 (Tr. 58:1-7).

Once a judgment is issued against the GVI, the VIDOJ forwards it to Office of Management and Budget ("OMB"), which prepares legislation.  Apdx-220 (Tr. 45:6-15).  However, "[t]here is no statutory priority.... [B]y practice, personnel costs take priority and then everything else comes in after that."  Apdx-221 (Tr. 46:12-14).  The

Legislature must approve via appropriations for judgments that were not budgeted. Apdx-227 (Tr. 52:2-12). The Legislature, via the senators, can approve or disapprove of the legislation/appropriations. Apdx-227 (Tr. 52:10-23). The Virgin Islands Code prohibits expenditures that are not appropriated. Apdx-227-28 (Tr. 52:24-53:1). And if there is no appropriation there can be no distribution of funds. Apdx-228 (Tr. 53:2-4)

A judgment in the cases below would require a special appropriation. Apdx-228 (Tr. 53:5-8). There is nothing that requires the GVI, specifically the Legislature, to make an appropriation for the payment of a tax judgment. Apdx-234 (Tr. 59:18-24).

*Joel Lee:* The Virgin Islands Bureau of Internal Revenue ("BIR")[3] *doesn't provide excise tax refunds, instead it issues a tax credit to taxpayers.* Apdx-249 (Tr. 74:6-13) (emphasis added). The BIR doesn't make a determination of how much, or when, tax refunds are paid; instead OMB informs the BIR of a dollar amount and target release date. Apdx-250 (Tr. 75:9-16). There is no specific routine; instead, whenever (non-BIR governmental agencies) are deemed to have cash available, those entities let the BIR know. Apdx-267 (Tr. 92:21-25).

---

[3] The BIR is the GVI agency that administers the tax code in the USVI, *see* 33 V.I.C. § 681(a).

Typically, the BIR pays on a first in first out method.  Apdx-251 (Tr. 76:4-6).

However, tax judgments are not paid by the BIR through the normal refund process.

Apdx-252 (Tr. 77:14-78:1).  Lee was not sure if the BIR had ever authorized a payment

of an excise tax refund.  Apdx-257 (Tr. 82:25-2).  Lee had never seen a notice of

disallowance for an excise tax claim for refund.  Apdx-259 (Tr. 84:4-7).  During Lee's

tenure as Director of the BIR, he had no knowledge *of any excise tax refund ever being

paid*.  Apdx-260 (Tr. 85:4-6).

***

After the evidentiary hearing, the Parties were required to file post-hearing

submissions.  *See* Doc. # 46 (March 4, 2022, trial brief). Before the Appellants filed

their consolidated post-hearing briefs, they moved the trial court to take judicial notice

of the reports issued by the Administrative Office of the U.S. Courts regarding the

respective civil and criminal cases commenced, terminated, and pending during the

years 2008-2020.  Apdx-321-410.  The trial court never ruled on this motion.

### B.    Report & Recommendation

Less than a month after the evidentiary hearing, the Magistrate issued the R&R.

Apdx-030.  As relevant here, the R&R concluded that (1) the District Court has

subject matter jurisdiction, (2) the Appellants had properly pleaded standing, and (3)

the Appellants adequately pleaded a claim under the Dormant Commerce Clause.

Apdx-045-47 (R&R at 16-18).

9

As to threshold issues of law, the R&R concluded that both the Tax Injunction Act ("TIA"), Apdx-041 (R&R at 12) (citing, *inter alia*, *American Resort Development Association v. Government of the Virgin Islands*, 848 F. App'x 79, 81 (3d Cir. 2021)), and the tax comity doctrine do not apply in the Virgin Islands, Apdx-043-44 (R&R at 14-15). As to tax comity, the R&R concluded that, other than a pair of District Court cases, "no other court has discussed whether the tax comity doctrine applies to the Virgin Islands. Although the [GVI] raised the issue of tax comity in the trial court in *Reefco* [*I*], neither that court (in ruling for the plaintiff) nor the Third Circuit (in its affirmance) made any mention of comity." Apdx-044 (R&R at 15). To that end, the R&R noted that

> although the issue [of tax comity] was before the Third Circuit in *American Resort Development Association*, the court stated that it "need not determine whether the tax comity doctrine applies." 848 F. App'x at 81 n.3. That said, the Third Circuit's review of the *Great Bay* court's holding that the TIA arguably applied in the Virgin Islands in [sic] instructive here. Specifically, the Third Circuit found that the rationale behind the district court's decision was flawed: "[W]e will not interpret Congress's repeal of a federal statute governing local property taxes—or the report accompanying the same—to extend the TIA to the Virgin Islands by mere implication." 848 F. App'x at 81. Mindful of the Third Circuit's caution not to extend decisional principles to the Virgin Islands by "mere implication," this Court therefore declines to apply the tax comity doctrine in these cases.

Apdx-044-45 (R&R at 15-16).

Ultimately, the R&R recommended that the GVI's motions to dismiss be denied.  Apdx-049 (R&R at 20).

However, because the R&R concluded that tax comity did not apply in the Virgin Islands in the first instance, the R&R never considered whether the factual situation that the trial court had concluded in *Great Bay* remained (i.e., that there was no adequate remedy available in local courts to aggrieved taxpayers).  For that reason, the R&R failed to (1) discuss any of the facts presented by the Parties at the evidentiary hearing, (2) consider how the condition of the dockets of the local level courts compared with the District Court, and (3) consider that there was no guarantee of repayment.

## III.    RULING PRESENT FOR REVIEW

The District Court issued its decision on August 18, 2022, holding, as relevant here, that the R&R "erred in predicting that the [tax] comity doctrine would not apply to the Virgin Islands."  Apdx-018 (Op. at 6).

Because the District Court concluded that tax comity does apply in the Virgin Islands it required the Appellants to demonstrate that the GVI "does not provide remedies that are plain, adequate, and complete."  Apdx-025 (Op. at 13) (citing *Fair Assessment*, 454 U.S. at 116).  The decision below relied on this Court's decision in *Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App' x 527, 531 n. 8 (3d Cir. 2015)

for the articulation of the plain, adequate, and complete test.  *See* Apdx-025 (Op. at 13).[4]

The decision below asserted that the trial court was "not convinced, however, that a federal remedy is any better suited for forcing refunds than one imposed by Virgin Islands courts." Apdx-026 (Op. at 14).  This conclusion was based on the fact that "any refund will require a commensurate appropriation from the Virgin Islands Legislature, Virgin Islands courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences."  Apdx-026 (Op. at 14) (cleaned up).  As to the final factor, while the Appellants only sought a tax refund, the decision below concluded that a mere tax refund suit would "risk disrupting state tax administration."  Apdx-027 (Op. at 15).

However, conspicuously absent from the District Court's decision was any discussion as to the GVI's current troubled financial situation, nor why a refund action was not a plain, adequate, and complete remedy in light of both the Virgin Islands Superior Court's docket growth (i.e., increasing case count) and the District

---

[4] "[W]hether: (1) the challenged law concerned 'commercial matters over which' the state 'enjoys wide regulatory latitude'; (2) the suit requires adjudicating 'any fundamental right or classification' to which heightened scrutiny applies; (3) the state courts are 'better positioned than their federal counterparts to correct any violation' and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect."

Court docket reduction. *See* Op. *passim*. Indeed, none of the evidence that the Parties adduced at the evidentiary hearing was ever mentioned, let alone meaningfully addressed by the decision below.

Finally, the trial court concluded that collateral estoppel does not apply against the GVI. Apdx-027 (Op. at 15).

The District Court entered a concomitant order (Apdx-007) dismissing the Appellants' respective cases. Appellants timely appealed. Apdx-001-06.

## SUMMARY OF THE ARGUMENT

The District Court erred in multiple ways, each of which requires that the decision below be reversed and the case remanded to be heard on the merits.

*First*, the tax comity doctrine does not apply in the Virgin Islands (as the Magistrate correctly concluded) because, as an Article IV territory, the GVI does not stand on equal footing as the several states. Moreover, and dispositive here, Congress has directed at all income tax litigation be conducted in federal (and not in local level) courts.

*Second,* if tax comity does apply in general, it should not apply here because of *Reefco*. In *Reefco I* and *Reefco II*, the District Court, and this Court, addressed the exact same factual and legal merit-based issues as in the instant case. Thus, as like cases should be decided alike, the Appellants here should be provided with the same relief

as in *Reefco* – a refund of taxes collected by the GVI when the GVI violated the Commerce Clause.

*Third*, tax comity should not apply here because the Appellants only seek a tax refund (and expressly do not seek injunction or declaratory relief).  Thus, those considerations which counsel against federal court interference with state/territorial taxation regimes are not present.  At bottom, the Appellants complied with the well-settled course of paying their taxes without delay and then sued for a refund.

*Fourth*, the Virgin Islands Superior Court does not provide a plain, adequate, and complete remedy; and by natural extension (to the extent that tax comity does apply) the doctrine should be declined to be invoked.  Such is true because the Superior Court has experienced an increase of over five thousand cases during the 2008 to 2020 fiscal years (amounting to an average increase of 385.9 cases per year). During the same period, the District Court has reduced its case count by 489 cases (an average of 37.6 cases per year).  This is in addition to the fact that recent (i.e., 2021) legislation *requires* the Superior Court to give litigants over the age of 70 mandatory trial preference (and provides litigants over the age of 65 permissive trial preference).

*Fifth*, there is no guarantee that the GVI will ever repay the Appellants the amount that they are owed.  The GVI's fiscal condition is dire and they payment of

judgments in favor of the Appellants would require special appropriations by the Legislature before judgments could be paid.  Indeed, the testimony below was clear – the GVI has never issued an excise tax cash refund.

*Sixth*, the GVI should have been estopped from attempting to relitigate the merits of *Reefco*.  Tax comity was argued by the GVI to the District Court in *Reefco I*, which was rejected, and comity could have been (but was not) argued to this Court in *Reefco II*.  The GVI should not be allowed to resurrect an already rejected legal theory. Furthermore, the District Court, relying on out-of-circuit precedent, improperly extended Supreme Court jurisprudence that prohibits collateral estoppel against the federal government.  But the reasons the Supreme Court gave justifying why the federal government should not be estopped are absent here.  Specifically, the GVI exclusively litigates in one district court, which is subject to only this Court's review. Thus, the potential to generate circuit-splits, which form the basis for Supreme Court *certiorari* review, is absent here.

## STATEMENT OF THE STANDARD & SCOPE OF REVIEW

This Court reviews a District Court's order granting a motion to dismiss *de novo*. *Chang v. Child.'s Advoc. Ctr. of Del. Weih Steve Chang*, 938 F.3d 384, 386 (3d Cir. 2019).

# ARGUMENT

## I. TAX COMITY IS INAPPLICABLE IN THIS CASE

### A.    Tax Comity Does Not Apply in the Virgin Islands

The Magistrate was correct (*see* Apdx-030), and the decision below was wrong, that the tax comity doctrine does not apply in the Virgin Islands.  This Court has stated that federalism concerns do not apply in the Virgin Islands because the Virgin Islands is an Article IV Territory.  *See Bluebeard's Castle, Inc. v. Gov't of the Virgin Islands*, 321 F.3d 394, 400-01 (3d Cir. 2003); *Pan Am. World Airways, Inc. v. Gov't of the Virgin Islands*, 459 F.2d 387, 390–91 (3d Cir. 1972).[5]

While this Court in *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 360-61 (3d Cir. 2007) did opine in broad strokes that federalism applies to the Virgin Islands courts, it did not touch upon tax comity.  Indeed, in a recent case, this Court reiterated that the TIA does not apply to the Virgin Islands and expressly refrained from opining whether tax comity applies.  *See Am. Resort Dev. Ass'n*, 848 F. App'x at 81 n. 3.  Further, as the R&R recognized, "[a]lthough the [GVI] raised the issue of tax comity in the trial court in *Reefco*, neither that court (in ruling for the plaintiff) nor [this Court] (in its affirmance) made any mention of comity."  Apdx-044 (R&R p. 15).  Finally, the R&R

---

[5] To the extent that the holdings in either of these three cases have been vitiated over the years, it is for this Court, sitting *en banc*, to overturn its prior holdings.  *See Ass'n of New Jersey Rifle & Pistol Clubs Inc. v. Att'y Gen. New Jersey*, 974 F.3d 237, 245 (3d Cir. 2020) (discussing prior panel rule).

was correct in observing that this Court cautioned lower courts "not to extend decisional principles to the Virgin Islands by 'mere implication[.]'" Apdx-044-45 (R&R at 15-16).[6]

Moreover, tax comity should not be applied because, "[a]s a territory, the Virgin Islands does not share the same sovereign independence as the states of the union; rather, the power to pass rules and regulations governing territories like the Virgin Islands rests with Congress." *Cooper v. Comm'r*, 718 F.3d 216, 219 (3d Cir. 2013) (citations omitted). To that end, "Congress passed legislation applying the Internal Revenue Code of the United States to the Virgin Islands." *Id*. (citing 48 U.S.C. § 1397). As a result, Congress has statutorily prescribed, 48 U.S.C. § 1612(a), that the District Court has exclusive jurisdiction over the income tax laws applicable in the Virgin Islands. And for those reasons, the District Court, not the Superior Court, adjudicates disputes over the tax code. *See Birdman v. Off. of the Governor*, 677 F.3d 167, 177 (3d Cir. 2012) ("jurisdiction in favor of the federal courts, in contrast to local courts, with respect to Virgin Islands tax cases."). Thus, federalism concerns which undergird the reasoning for tax comity in general are noticeably absent here because Congress has required that the income tax laws applicable to the Virgin

---

[6] A review of *Fair Assessment* shows that it has been cited by this Court 22 times, but only once in relationship to a Virgin Islands case, *viz., Am. Resort Dev. Ass'n, supra*.

Islands (both federal and territorial, *see* 26 U.S.C. § 934 (Congressional authorization for tax incentive program), 29 V.I.C. § 713b (income tax reduction)), be adjudicated only in the District Court (and appealed only to this Court).

Accordingly, tax comity should not apply to the Virgin Islands; the Magistrate's conclusion was correct, and the decision below (rejecting the R&R's conclusion) was erroneous.

**B.     If Tax Comity Applies in General, it Should Not Apply Here**

**1.     Tax Comity Should Not Apply Because of *Reefco***

The District Court in *Reefco I* held that Reefco was entitled to a refund of the same excise taxes at issue here, and this Court affirmed in *Reefco II*.  Unsurprisingly, this case presents the very same legal issues that the District Court and this Court have already addressed.  The only difference between this case and *Reefco* is the name of the taxpayers and the amount taxes that should be refunded; consequently, as "like cases should be decided alike," *Martin*, 546 U.S. at 139, there is no principled reason why the outcome for these Taxpayer-Appellants should be any different than in *Reefco*.

Indeed, the Appellants' "wait and see" approach is more than reasonable, as it allowed *Reefco* to progress in the normal course before the District Court and this Court, thereby saving the federal court system judicial resources by not having to entertain additional cases; instead, one test case, *Reefco*, became outcome dispositive.

Further, because both the District Court and this Court exercised jurisdiction over Reefco's Commerce Clause claim, none of the reasons that justify the declination of jurisdiction (under tax comity or any other basis) exist here. *See Colo. River Water,* 424 U.S. at 817 (unflagging obligation to exercise jurisdiction when Congress so provides). At bottom, the Appellants should not be forced to run a gauntlet different from Reefco when this case is exactly the same as *Reefco.*

According, just as the District Court did in *Reefco I,* and just as this Court did in *Reefco II,* the trial court should have exercised jurisdiction over the Appellants' excise tax refund claims to enter a judgment in the Appellants' favor against the GVI for the excise taxes that were applied and collected in an unconstitutional manner. *See Reefco II*, 830 F. App'x at 85 (citations omitted) ("[t]he resulting violation of the Commerce Clause is obvious and the GVI's claims to the contrary do not merit further discussion.").

### 2.    Tax Comity Should Not Apply Because the Relief Sought is Only Monetary (i.e., Not Injunctive or Declaratory)

The decision below fails to recognize that this case does *not* involve an attempt to impede the collection of state/territorial taxes. *Cf. Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 297 (1943). Instead, like *Reefco,* it seeks a refund of excise taxes paid.

The District Court relied on three Supreme Court cases in reaching its conclusion that tax comity applies in this refund case, but a close inspection of these cases reveals that they do not apply to the facts at hand.

In *Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010), two retail suppliers and an Ohio-resident purchaser of natural gas from retail suppliers brought suit in federal court under the Declaratory Judgment Act (28 U.S.C. §§ 2201-02). The *Levin* plaintiffs sought to *enjoin the application of the tax exemptions* under the Constitution. *See Levin*, 560 U.S. at 429 ("Respondents' requested remedy, an order invalidating the exemptions"). Critical for the Supreme Court's consideration in *Levin* was that, assuming the constitutional "claims had merit, respondents would have no entitlement to their preferred remedy." *Id.* at 431. As a result, state "courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences and because the TIA does not constrain their remedial options." *Id.* at 431–32.

These considerations are markedly absent here. *First*, and most importantly, the Appellants did not seek to enjoin the GVI from collecting excises taxes. *Second*, the Appellants did *not* seek to remedy (on a forward-looking basis) any constitutional violation. Instead, the Appellants sought retrospective relief in the modest form of a tax refund. *Third*, the considerations that permeate federal-state comity considerations

are not present.  Stated differently, as this case seeks money and no form of equitable, injunctive, or declaratory relief, a judgment requiring the payment of a tax refund issued by the trial court would look exactly the same as one issued by the Superior Court.  Thus, there is no concern that a judgment issued by the District Court would "risk disrupting state tax administration." *Id*. at 417.  *Finally,* the Appellants did not ask for the District Court to do anything that it (and this Court) has not already done before.  Consequently, the die has already been cast in *Reefco*, which refutes any claim that tax comity would counsel against the District Court adjudicating the case below.

In discussing the TIA and tax comity, the Supreme Court observed that "[e]ven while refusing to grant certain forms of equitable relief, those courts *did not refuse to hear every suit that would have a negative impact on States' revenues*." *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) (emphasis added).  Tax comity is not a blunt instrument, instead its use is much more restrained and focused.  To that end, Justice Ginsberg noted that the TIA and tax comity are not designed "to prevent federal-court interference with all aspects of state tax administration, but more modestly to stop litigants from using federal courts to circumvent States' *pay without delay, then sue for a refund regimes*." *Id*. at 19 (Ginsburg, J., concurring) (emphasis added, citing *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) ("Congress directed taxpayers to pursue refund suits

instead of attempting to restrain collections.")).  But that is exactly what the Appellants did – they paid without delay and then sued for a refund.

This reasoning hews closely to Judge Ambro's concurring opinion in *Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App'x 527, 531 (3d Cir. 2015).  Judge Ambro noted that

> if comity were extended to every case where a plaintiff challenged a state practice implicating revenue generation, *Burford* abstention would become irrelevant.... If the comity doctrine were extended to cases like this one, any suit from which a federal court could abstain under *Burford* would much more easily be dismissed on comity grounds, a result hardly consistent with the Supreme Court's admonition that there is only a "narrow range of circumstances in which *Burford* can justify the dismissal of a federal action."

*Id*. at 535 (Ambro, *J*. concurring) (citations omitted).

The decision below also cites to *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981), asserting, "based on comity concerns, that 42 U.S.C. § 1983 does not permit federal courts to award damages in state taxation cases when state law provides an adequate remedy."  Apndx-020 (Op. at 8).  But a cursory inspection shows why *Fair Assessment* is inapplicable to this case.  In *Fair Assessment*, the Supreme Court was forced to "reconcile two somewhat intermittent and conflicting lines of authority as to whether a damages action may be brought under 42 U.S.C. § 1983 to redress the allegedly unconstitutional administration of a state tax system." 454 U.S. at 101.  This case, in contrast to *Fair Assessment*, did not seek

damages under Section 1983 (or other causes of action) for alleged unconstitutional actions. *Cf. Id.* at 106 ("[t]he Cassillys brought this § 1983 action in federal court seeking actual damages in the amount of overassessments from 1975 to 1979, and punitive damages of $75,000 from each respondent."). Instead, this case seeks solely a refund of taxes paid. This distinction makes all the difference and renders *Fair Assessment* inapposite. *Cf. Hibbs*, 542 U.S. at 104 (pay the tax and then sue for a refund).

The decision below also cites to *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582 (1995). In that case, the High Court reviewed the evolution of the law regarding federal interference with state taxation. However, it noted that "the States may determine whether to provide predeprivation process (e.g., an injunction) or instead to afford postdeprivation relief (e.g., a refund)." *Id.* at 587 (citations omitted). Thus, "federal courts cannot enjoin the collection of state taxes when a remedy at law is available." *Id.* at 589 (citations omitted). But, to reiterate, the Appellants did not seek to enjoin the collection of excise taxes by the GVI, instead they sought to use the available remedy at law, *see* 33 V.I.C. § 1692 (waiving the GVI's sovereign immunity), to obtain a tax refund. The well-established conditions for stating a tax refund claim are straightforward: Pay the tax, *see Psaty v. United States*, 442 F.2d 1154, 1158 (3d Cir. 1971), timely file a claim for refund, *see United States v. Dalm*,

494 U.S. 596, 601–02 (1990), then file suit if the refund claim has not been paid, *Hibbs*, 542 U.S. at 104.  Thus, retrospective/postdeprivation/refund litigation does not raise the same concerns that animate the tax comity principles; consequently, tax comity does not apply.

Finally, in *Great Bay*, the District Court concluded that tax comity applies (a point we contest under extant Third Circuit law, *see* discussion *supra*) in general but noted that "when plaintiffs file suit *seeking injunctive or declaratory relief or damages* with respect to a local tax imposed on them by the Virgin Islands Government, they may only proceed in this Court if: (1) Congress has entered the field and the plaintiffs are seeking to enforce such a federally-created right, or (2) a plain, adequate, and complete remedy is not available in the local courts."  *Great Bay*, 2018 WL 4690372, at *12 (emphasis added).  Again, in this case, the Appellants did not seek injunctive, declaratory, equitable relief, or damages – but rather a refund of the tax assessed and collected in violation of the Constitution.

In sum, given that the Appellants only sought a refund of excise taxes paid, tax comity does not apply and the decision below concluding to the contrary should be reversed.

### 3.   Superior Court does not provide a plain, adequate, and Complete Remedy

The Appellants provided more than sufficient factual evidence that the Virgin

Islands local level courts (i.e., the Superior Court) does not provide a plain, adequate, and complete remedy.  And for that reason, tax comity should not apply.

The local level judiciary reports, which were received into evidence as the trial court judicially noticed them pursuant to Fed. R. Evid. 201, demonstrate the bleak picture of the state of the Superior Court – an average increase in civil and criminal cases of 385.9 cases per year and a net of over five thousand cases (not to mention the backlog of cases that were present before the 2008 judiciary report was compiled).[7] *See* Addendum – Chart 1.  As the numbers bear out, the case count is increasing, which has led to delays in bringing cases to judgment.[8]  Moreover, the state of affairs of the Superior Court are even bleaker compared to the District Court.[9]  Indeed, the District Court over the same time period has reduced its case count by 489 cases (an

---

[7] The computations are set forth in detail in the attached computational addendum.

[8] The Appellants note that the statistics make no differentiation between cases that settle and cases that are disposed of over via judgment.  There can be no reasonable argument against the proposition that cases resolved via judgment (e.g., trial, summary judgment) take even longer than your typical case, which is resolved via settlement.  When viewed through the lens of the length of time it takes to obtain a judgment, the state of the Superior Court is even more dire.

[9] This Court can, and should, take judicial notice of the reports from the Administrative Office of the U.S. Courts, per Fed. R. Evid. 201.  *See Vanderklok v. United States*, 868 F.3d 189, 205 n. 15 (3d Cir. 2017) (taking judicial notice of governmental websites).  The Appellants have contemporaneously moved the Court to take judicial notice of the Administrative Office of the U.S. Courts statistics, *see* CA3 Doc. # 15-1 (motion for judicial notice) & # 15-2 (exhibits 1-25, statistical reports, *reprinted in* Apndx-329-410).

average reduction of 37.6 cases per year).  *See* Addendum – Chart 2.  Thus, the

Superior Court is trending (and has been for well over a decade) in the wrong

direction, while the District Court is trending in the right direction.

This conclusion comes as no surprise to Virgin Islands legal practitioners, as it

is well known of docket problems in the Superior Court.  *See, e.g., Morton v. Testamark*,

2022 WL 17669172, at *4 (D.V.I. Dec. 14, 2022) ("[a]s it currently stands, Morton's

[local level habeas] petition has been pending in the Superior Court for eight years,

and no action has been taken in Morton's case for over five years."); *Kuykendall v. Hart*,

70 V.I. 574, 584 (V.I. Super. 2019) ("Clearly, this case has languished. No one

disputes that point. It was filed in 2005 and fourteen years later it remains pending.

One factor for the delay is that no fewer than six judges were assigned to this case

before [one of the defendants] filed its failure to prosecute motion in 2010 and [a

different defendant's] motion to dismiss based on the prior action pending doctrine,

filed five years before, was still pending.  Kuykendall could have been more proactive

in drawing attention to this case and in prosecuting their claims since, historically, the

parties have set the pace of litigation.  But there is little the parties can do when the

trial court fails to discharge its responsibilities.").

However, the problems the Superior Court is facing were so acute, widespread,

and widely known that in 2021 the Virgin Islands Legislature passed Act 8468, which

amended 5 V.I.C. § 31.  Section 31 now includes a new subsection (subsection b), which provides a mandatory trial preference for litigants over 70, and a permissive trial preference for litigants over 65.  *See* 5 V.I.C. § 31(b)(1) & (2).

Any doubt as to the functioning of the Superior Court is dispelled by looking at the legislative history.  On July 6, 2021, the 34th Legislature of the Virgin Islands, Committee on Rules and Judiciary held a hearing on Act 8468 (the "Hearing").[10, 11] As explained at the Hearing, Act 8468 recognizes that there is a backlog in bringing cases to trial. It recognizes that the backlog disproportionately impacts two at-risk groups of people – seniors and the terminally ill. And it is designed/tailored to ameliorate those harms providing a prompt trial to minimize the potential that they die before their claims are heard. Hearing at 29:08 to 29:25.

The legislative history (and associated findings) demonstrates that, as Senator Janelle K. Sarauw (who introduced the Bill) stated, there remains a large backlog of actions, despite the expansion of the territorial court system in recent years. *Id.* at 28:00 to 28:22. This backlog threatens the fundamental guarantees of "[t]he Constitution and justice [because] that's not how this [is supposed to] work[]." *Id.* at

---

[10] The Court can take judicial notice of legislative materials under Fed. R. Evid. 201.
[11] Counsel has not been able to locate an official transcript of the hearing. The quotations are based on counsel's review of the recording.  The pin cites to the term "Hearing" refer to timestamps in the video *available at* https://livestream.com/legittv/34th/videos/223077066 (last accessed Jan. 24, 2023).

28:53 to 29:04. "People should not be dying waiting to settle a civil matter." *Id.* at

29:19 to 29:26.

> There is a saying: "Justice delayed is justice denied." So what is happening now is not an attack on our judicial system, but it is a level of accountability, and recognizing that *we have an unnecessary backlog in our courts.* And it's not fair to those who are waiting for justice to be served.

*Id.* at 29:41 to 30:05 (emphasis added).

Senator Sarauw further acknowledged that the backlog has negative collateral

consequences on other government functions. For example, as a result of the judicial

backlog, the Department of Corrections has had to hire additional guards to attend

to increased number of pretrial detainees awaiting trial. *Id.* at 28:22 to 28:48.

Senator Novelle E. Francis, Jr. acknowledged that "[t]he truth is we have a

number of cases that [have] *sat in the courts for years–5, 10, 15, 20 years*–these civil

proceedings, civil litigations, and it's unfair. It's unfair for the plaintiff to have to wait

this length of time regardless of these circumstances or the situation." *Id.* at 45:20 to

45:43 (emphasis added). "Every single day we're hearing more and more of our seniors

again passing on – every single day. And it's only right that they're able to–again–put

their house in order in some timely fashion as they are preparing for going to meet

their maker." *Id.* at 46:00 to 46:19.

Senator Franklin D. Johnson acknowledged that "[w]e need to make sure that

people [aren't] sitting there for years for their fate, whether [the case is] civil or

criminal" because these litigants "ain't getting younger." *Id*. at 50:20 to 50:47.

Senator Kurt Vialet acknowledged that "[i]n order for government to work, all the parts need to work—the legislative, the judicial, the executive. And when one of those elements or components [doesn't] work, it impacts the next. So when the judicial [doesn't] have a process for expeditiously moving these cases, people die without the case being resolved. People die on the street without justice ever coming to light." *Id*. at 1:05:14 to 1:05:49.

These legislative findings demonstrate that the Superior Court has not provided a "plain, adequate, and complete remedy" before the passage of Act 8468, but now with the passage of the Act every civil litigant over the age of 70 is entitled to have the Superior Court "set the matter for trial not more than 180 days from that date that the elderly party moves for preference[,]" with no continuances granted.  5 V.I.C. § 31(b)(4).  And those over 65 are able to seek a discretionary trial preference as well. 5 V.I.C. § 31(b)(2).  Consequently, civil litigants who do not fall under the ambit of Act 8468 will have to wait for the civil trials of the elderly to be conducted. This will undoubtably have an impact in the Superior Court, as criminal cases will need to be resolved in a speedy manner as required by the 6th Amendment.  At bottom, corporate civil litigants such as the Appellants in this case will be forced to the back of a very long line.  And, as Senator Novelle E. Francis, Jr. acknowledged, these

consolidated cases could take literal decades to resolve.

Accordingly, forcing the Appellants to have their cases sit in the Superior "court[] for years—5, 10, 15, 20 years— ... it's unfair."  Hearing at 45:20 to 45:43 (statement of Senator Francis).  Consequently, litigating the Appellants' cases to judgement (not including collections, *see* discussion *infra*) renders the territorial remedy inadequate.  *Cf. Great Bay,* 2018 WL 4690372, at *19 ("[t]he Supreme Court has held, for example, that a two-year delay with no interest does not render a state remedy inadequate.") (citation omitted).  The delay in the Superior Court is patent (especially so when compared to the District Court), and there can be no reasonable conclusion that a plain, adequate, and complete remedy is available to the Appellants in Superior Court.

Under these grim state-of-affairs of the Superior Court, tax comity must not apply, the decision below must be reversed, and the case remanded with instructions to exercise jurisdiction.

### 4.    There is No Guarantee of Repayment

The evidentiary hearing before the Magistrate revealed how little has changed since September 28, 2018, when the District Court last held that the Virgin Islands does not provide a plain, adequate, and complete remedy. *See Great Bay, supra.*  During the evidentiary hearing, the GVI's witnesses answered questions about the same facts

that the District Court considered in *Great Bay* and revealed that the situation is materially unchanged (or worse). To wit:

In *Great Bay*, the District Court credited the fact that the GVI prioritized payroll and allotments to semiautonomous agencies over tax refunds. *Id.* at *19. It still does. Apdx-221, 228 (Tr. at 46, 53). There is still "no binding policy or law . . . that would require the payment of tax refunds to be the first priority for the treasury." *Great Bay, supra*, at *20.

In *Great Bay*, the District Court credited that fact that the GVI owed outstanding refunds totaling some $45-$50 million. *Id.* at *19. Notwithstanding the rosier fiscal picture, the GVI has tried to paint in recent times, it has still somehow managed to *increase* its tax refund backlog up to $80 million since *Great Bay*. Apdx-272-73 (Tr. at 97-98). This amount is likely to increase by at least another $55 million in individual income tax refunds, Apdx-261 (Tr. at 86), and an unknown number of

corporate[12] refunds, *id.*, as soon as the tax year 2021 tax returns are due. Apdx-261 (Tr. at 86).[13]

In *Great Bay*, the District Court credited the fact that whether or not refunds would be paid "all depends on the availability of cash," *Great Bay, supra*, at *20, and payment of "judgments awarding tax refunds are subject to the availability of funds[,]" *id.* This remains emphatically the case. Apdx-239-40, 269 (Tr. at 64-65, 94).[14]

In *Great Bay*, the District Court credited the fact that "the statutorily-mandated reserve fund for 'other taxes' . . . has not been funded." *Great Bay, supra*, at *20 (citing 3 V.I.C. § 179). It is still not funded. Apdx-223 (Tr. at 48).

In *Great Bay*, the District Court credited the testimony of the Commissioner of Finance that the GVI was in dire financial condition. *Great Bay, supra*, at *19. At the

---

[12] Director of the BIR, Joel Lee, was unaware of how much corporations claimed in refunds in an average year, Apdx-261 (Tr. at 86), and had no idea how many corporate refunds remained unpaid for recent tax years. Apdx-264 (Tr. at 89). Corporations do not receive their refunds according to the same prioritization protocol as individual taxpayers. Apdx-270 (Tr. at 95).

[13] *See Ocwen USVI Services, LLC. v. The United States Virgin Islands*, case no. 3:22-cv-66 (D.V.I.), which is a recent tax refund suit against the GVI for $27.8M (before statutory interest).

[14] And, as if to prove the point, Governor Bryan during a press conference a few days after the evidentiary hearing and hedged on whether the next scheduled tranche of refunds would be issued this month because "cash is running slim. Numbers are still kind of sketchy." *See* Government House Weekly Press Briefing/ COVID-19 Update (Feb. 28, 2022) (video at 30:20-31:35) *available at* https://www.facebook.com/GovernmentHouseUSVI/videos/799573268102781 (last accessed Jan. 24, 2023).

evidentiary hearing, OMB Director Jennifer O'Neal testified that the GVI's "chronic cash flow challenges" continued from *Great Bay* in September 2018 until at least April 2020. Apdx-233 (Tr. at 58).

Furthermore, the evidentiary hearing uncovered new damning evidence that was not available to the District Court in *Great Bay*. Perhaps the most astonishing revelation was that, even if taxpayers are able to obtain a refund judgment from the territorial judiciary, that is not the end of the matter – the GVI does not have legal authority to obey the judgment without first going to the Legislature of the Virgin Islands and requesting an appropriation – an appropriation that the Legislature is free to enact or not in its sole discretion. Apdx-220, 227, 234 (Tr. at 45, 52, 59). The remedy available in the territorial judiciary is, accordingly, not "plain" because it is not "certain." *See Garrett v. Bamford*, 538 F.2d 63, 67 (3d Cir. 1976) ("it is sufficient for a finding of inadequacy that the availability of the state remedy be *merely uncertain*") (emphasis added). Instead of depending on the fair application of law, Appellants' remedy will instead depend on the whims of the political branches of the GVI. While the Legislature does appropriate approximately $350 thousand annually to a judgment fund for judgments of more than $25 thousand, the GVI does not pay tax refund judgments from that fund. Apdx-184 (Tr. 9:20-25); Apdx-193 (Tr. 18:18-21, 22-24).

Finally, the GVI *admitted it has never issued an excise tax cash refund.* Apdx-260 (Tr. at 85).

***

For these reasons, in isolation or in conjunction, tax comity should not apply and the District Court's conclusion that it did was erroneous.  The decision below must be reversed and remanded with instructions to permit the Appellants' cases to proceed on the merits.

## II.    THE GVI SHOULD BE ESTOPPED FROM RELITIGATING *REEFCO*

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147 (1979)).  "As commonly explained, the doctrine of collateral estoppel can apply to preclude relitigation of *both issues of law and issues of fact* if those issues were conclusively determined in a prior action." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170–71 (1984) (citations omitted, emphasis added); *see also Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (discussing collateral estoppel).

In order for collateral estoppel to be applied, a court must have actually and finally decided an issue of fact or of the application of law to fact, and that decision must have been necessary to the outcome of the prior action.  *See Allen*, 449 U.S. at

34

94; *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).  In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), the Supreme Court observed:

> [A]ssuming that the issue was resolved correctly in the first suit, there is reason to be concerned about the plaintiff's allocation of resources.  *Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table* or a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.  Although neither judges, the parties, nor the adversary system performs perfectly in all cases, *the requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard.*

*Id.* at 328 (cleaned up, emphasis added).

Appellants attempted to use collateral estoppel in this case to prevent the GVI from relitigating identical issues already decided in *Reefco I* and *Reefco II* by merely switching adversaries (i.e., switching from Reefco to the Appellants).  *See id.* at 329. Appellants invoked below "a variant of this doctrine, known as offensive non-mutual collateral estoppel, in which a plaintiff seeks to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Karns v. Shanahan*, 879 F.3d 504, 514 n. 3 (3d Cir. 2018) (cleaned up citing *Parklane Hosiery, supra*).

As the GVI was a party to the *Reefco* litigation and this case, collateral estoppel should be applicable in the instant matter.  *See Allen*, 449 U.S. at 90.  Collateral estoppel applies to both the issues of law and fact that were determined in the

litigation before the District Court and this Court. *See Stauffer Chem.*, 464 U.S. at 165. The issues of law, fact, and the application of fact to law, *see generally Reefco I* and *Reefco II* (i.e., that the GVI was administering the excise tax in an unconstitutional manner), were in fact decided before courts of competent jurisdiction; there can be no credible argument to the contrary. Given that the GVI had a full and fair opportunity to litigate its position in *Reefco I* and *Reefco II*, which it lost, it is now collaterally estopped from attempting to relitigate the same issues against the Appellants. *Parklane Hosiery,* 439 U.S. at 328. The decision below to the contrary was erroneous and must be reversed.

Importantly, the GVI argued tax comity to the District Court in *Reefco*. *See* Apdx-422 ("Whenever a litigant brings a federal claim to challenge the validity of a state tax, the Supreme Court of the United States emphasizes that the federal court afford comity to the state court to allow the state court to determine the validity of the state tax."). Indeed, the District Court rejected the GVI's tax comity argument when in granted in part, and denied in part, its motion to dismiss in *Reefco I*. *See Reefco I,* case no. 3:14-cv-110 (D.V.I.) at ECF No. 38. And when given an opportunity to contest tax comity on appeal to this Court, the GVI failed to raise it in its opening brief in *Reefco II*. *See Reefco II,* case no. 18-3290 (3d Cir.) (opening brief dated March 1, 2019).

This Court has articulated that

> collateral estoppel, also known as issue preclusion, prohibits relitigation of an issue that has been fully and fairly litigated previously. The elements for collateral estoppel are satisfied when: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.

*Karns*, 879 F.3d at 514 fn. 3 (cleaned up).

All four elements are present here as (1) both the constitutionality of the GVI's application of the excise tax for the relevant time period was involved in *Reefco I* and *Reefco II and* tax comity was explicitly involved in *Reefco I* (and implicitly involved in *Reefco II*);  (2) the issue of the Commerce Clause was actually litigated in *Reefco I* and *Reefco II and* tax comity was actually litigated in *Reefco I* (and could have been litigated in *Reefco II* if the GVI had so chosen); (3) a final and valid judgment was issued by the District Court, and affirmed by this Court; and (4) the determination of the constitutionality of the application of the excise was essential (indeed, that was what *Reefco I* and *Reefco II* were all about) *and* the rejection of the tax comity argument was also essential in *Reefco*.  Regardless of the articulation of the collateral estoppel test, *compare Parklane Hosiery, supra with Karns, supra*, collateral estoppel applies to the GVI by virtue of *Reefco I* and *Reefco II*.  Accordingly, the GVI should have been estopped from contesting, *inter alia*, that tax comity applies, and/or that the Appellants are not entitled to a refund.

The decision below relied on one out-of-circuit case, *Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.*, 768 F.2d 1558, 1579 (11th Cir. 1985), for the proposition that collateral estoppel does not apply to a state government. Apdx-027 (Op. at 15). The *Hercules Carriers* decision cited to *United States v. Mendoza*, 464 U.S. 154 (1984), for the reasons justifying extending the inapplicability of collateral estoppel from the federal government to the various state governments.

However, this Court has cited to *Mendoza* only eight times, and has never held that estoppel does not apply to state governments in general, nor the GVI in particular. Moreover, two of this Court's cases seem to imply that, in the appropriate circumstances, collateral estoppel can apply against a state or territorial government.

In *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519 (3d Cir. 2002) this Court addressed the "unmixed questions of law" doctrine and concluded that "foreclosing the [Pennsylvania Public Utility Commission] from relitigating its Eleventh Amendment immunity issue with Amtrak will not impede the development of the law because the [Pennsylvania Public Utility Commission] will remain free to relitigate that issue with anyone else who hauls it into federal court." *Id*. at 530–31 (citing *Mendoza, supra*). Thus, in *Nat'l R.R. Passenger Corp.* this Court applied collateral estoppel against a state regulatory body.

And in *Trade Waste Mgmt. Ass'n, Inc. v. Hughey*, 780 F.2d 221 (3d Cir. 1985) this Court mentioned *Mendoza* in a string citation for the proposition that state officials who administer a state statute "would be free in another proceeding to rely upon a different and broader construction." *Id.* at 232. *Trade Waste* does not hold that collateral estoppel is inapplicable against state/territorial governments.

However, if this panel concludes that it is free to write on a blank slate regarding the applicability of collateral estoppel to the GVI, it should conclude, under the unique facts of this case, that it is not precluded. This Court should reach that conclusion because the reasons that inform the Supreme Court's decision in *Mendoza* are noticeably absent here.

The Supreme Court, in discussing the various litigation taking place by the federal government in the various Circuit Courts of Appeals, reasoned that allowing collateral estoppel against the federal government "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *Mendoza*, 564 U.S. at 160. The Supreme Court explained that "[a]llowing one final adjudication would deprive [the Supreme] Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before [the Supreme C]ourt grants certiorari." *Id.* Such reasoning was

39

informed because the federal "government is a party to a far greater number of cases on a nationwide basis than even the most litigious private entity[.]" *Id.* at 159.

But none of these factors apply to the GVI. Indeed, all of the litigation against the GVI takes place in the District Court of the Virgin Islands,[15] subject to appeal to just one Circuit – this Court. *See* 28 U.S.C. § 41. Thus, there is no benefit of having several Courts of Appeals weighing in on a matter. This is especially true when an adverse decision is entered against the GVI by the District Court of the Virgin Islands and is addressed on appeal by this Court. To state the obvious, at some point litigation must end, and allowing the GVI to maintain a legal position that has already been rejected engenders no faith in our legal system. This is especially true in the field of taxation as "[t]ax litigation is expensive, and [the GVI] litigates with taxpayer-provided funds while [taxpayers] must litigate with their own funds." *Intermountain Ins. Serv. of Vail, LLC v. Comm'r*, 134 T.C. 211, 217 (T.C. 2010). Collateral estoppel should apply, and the decision below erroneously concluded to the contrary.

Finally, there is no justifiable reason not to apply equitable principles in full against the GVI. If a court is able to invoke judicial estoppel against a state, *see New Hampshire v. Maine*, 532 U.S. 742 (2001) (using judicial estoppel to preclude New

---

[15] The GVI does not litigate on a nationwide basis and does not even come close to the number of federal government cases working their way through the federal court system.

Hampshire from asserting a position contrary to a prior position in taken decades before) because, *inter alia*, it "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped[,]" *id.* at 751, it goes to reason that that equity would also apply against a state/territory when it has had a full opportunity to litigate the merits of the same issues before the court in a prior case when those issues were already conclusively determined. *Stauffer Chem. Co.*, 464 U.S. at 170–71. Accordingly, estopping a state/territory (like every other litigant besides the federal government) has the salutary effect of avoiding "repeated litigation of the same issue" against different parties and avoids the appearance of a judicial "gaming table." *Parklane Hosiery*, 439 U.S. at 328.

## CONCLUSION

For the foregoing reasons, the Court should conclude that (1) tax comity does not apply in the Virgin Islands (or, alternatively, that it does not apply in this case) and (2) that collateral estoppel applies against the GVI.  Consequently, this Court should reverse the decision below and remand the case to allow the Appellants to proceed on the merits of their respective cases.

*//*

*//*

*//*

Respectfully Submitted,

/s/ Joseph A. DiRuzzo, III | /s/ Daniel M. Lader
Joseph A. DiRuzzo, III | Daniel M. Lader
Florida Bar No. 0619175 | Florida Bar No. 1004963
DiRuzzo & Company | DiRuzzo & Company
401 East Las Olas Blvd., Suite 1400 | 401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301 | Ft. Lauderdale, FL 33301
954.615.1676 (Office) | 954.615.1676 (Office)
954.827.0340 (Fax) | 954.827.0340 (Fax)
jd@diruzzolaw.com | dl@diruzzolaw.com

Dated Jan. 26, 2023

*Attorneys for the Appellants*

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned counsel hereby certify that they are members of the bar of the United States Courts of Appeals for the Third Circuit.

/s/ Joseph A. DiRuzzo, III | /s/ Daniel M. Lader
Joseph A. DiRuzzo, III | Daniel M. Lader

## CERTIFICATE OF COMPLIANCE RE: WORD COUNT

Pursuant to Fed. R. App. P. 32(g)(1), counsel certifies that this brief is in compliance with the 13,000 typed-volume limitation of Rule 32(a)(7)(B)(i). The instant brief is 9,898 words in length. The brief has been prepared using Microsoft Word, Goudy Old Style font in 14 point.

This petition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it was prepared in Goudy Old Style 14-point typeface using Microsoft Office Word.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

## CERTIFICATE OF COMPLIANCE RE: VIRUS CHECK

Counsel also certifies that he has performed a virus scan on the E-Brief using Microsoft Defender Antivirus software.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III


## CERTIFICATE OF COMPLIANCE RE: E-BRIEF

Counsel hereby certifies that the text of the E-Brief and the text of the hardcopy briefs are identical.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III


## CERTIFICATE OF SERVICE

I hereby certify that on Jan. 26, 2023, I caused:

1.      Pursuant to Local Appellate Rule Misc. 113.14, an electronic original copy of the brief and volumes I, and II of the appendix to be filed via ECF.  Seven (7) paper copies of the brief and volume I of the joint appendix and four (4) paper copies of volume II of the joint appendix and volume I of the sealed appendix and will be delivered in five business days via USPS to the Clerk, United States Court of Appeals for the Third Circuit, 601 Market Street, Philadelphia, PA, 19106.

2.      An electronic copy to counsel of record (note that there has been no appearance for the Government of the Virgin Islands).

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

# COMPUTATIONAL ADDENDUM
# CHART 1

**SUPERIOR COURT OF THE VIRGIN ISLANDS**

| YEAR | STT Filed Civil* | STT Terminated Civil | TOTAL Civil (Filed) | TOTAL Terminated Civil | NET Civil | STT Filed Criminal | STT Terminated Criminal | TOTAL Filed Criminal | TOTAL Terminated Criminal | NET Criminal | STX Filed Civil | STX Terminated Civil | STX Filed Criminal | STX Terminated Criminal | TOTAL Filed Criminal & Civil | TOTAL Terminated | TOTAL NET |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2008 | 634 | 679 | 1270 | 1223 | 47 | 557 | 570 | 1399 | 1233 | 166 | 636 | 544 | 842 | 663 | 2669 | 2456 | 213 |
| 2009 | 634 | 586 | 1290 | 1133 | 157 | 859 | 576 | 1678 | 1193 | 485 | 656 | 547 | 819 | 617 | 2968 | 2326 | 642 |
| 2010 | 523 | 441 | 909 | 716 | 193 | 891 | 296 | 2256 | 704 | 1552 | 386 | 275 | 1365 | 408 | 3165 | 1420 | 1745 |
| 2011 | 509 | 437 | 864 | 713 | 151 | 855 | 528 | 2192 | 1092 | 1100 | 355 | 276 | 1337 | 564 | 3056 | 1805 | 1251 |
| 2012 | 532 | 565 | 821 | 933 | -112 | 744 | 782 | 1575 | 1510 | 65 | 289 | 368 | 831 | 728 | 2396 | 2443 | -47 |
| 2013 | 463 | 570 | 765 | 873 | -108 | 611 | 619 | 1274 | 1327 | -53 | 302 | 303 | 663 | 708 | 2039 | 2200 | -161 |
| 2014 | 438 | 452 | 874 | 771 | 103 | 524 | 502 | 984 | 977 | 7 | 436 | 319 | 460 | 475 | 1858 | 1748 | 110 |
| 2015 | 483 | 516 | 808 | 766 | 42 | 472 | 639 | 910 | 1144 | -234 | 325 | 250 | 438 | 505 | 1718 | 1910 | -192 |
| 2016 | 571 | 567 | 1575 | 1135 | 440 | 412 | 588 | 795 | 1159 | -364 | 1004 | 568 | 383 | 571 | 2370 | 2294 | 76 |
| 2017 | 384 | 531 | 1036 | 1092 | -56 | 587 | 593 | 1095 | 1108 | -13 | 652 | 561 | 508 | 515 | 2131 | 2200 | -69 |
| 2018** | 655 | 410 | 1502 | 788 | 714 | 347 | 374 | 713 | 785 | -72 | 847 | 378 | 366 | 411 | 2215 | 1573 | 642 |
| 2019*** | 649 | 640 | 1343 | 1404 | -61 |  |  | 804 | 719 | 85 | 694 | 764 |  |  | 2147 | 2123 | 24 |
| 2020 | 557 | 330 | 924 | 636 | 288 | 360 | 197 | 885 | 390 | 495 | 367 | 306 | 525 | 193 | 1809 | 1026 | 783 |

| Total Net Civil | Total Net Criminal | Total Net Civil & Criminal | Average Net Per Year |
|---|---|---|---|
| 1798 | 3219 | 5017 | 385.9230769 |

\* Civil cases are only the civil non-jury and the civil jury (small claims etc. are excluded); criminal cases including both jury and non-jury.

\*\* Complex Division was created effective 10/1/2018 (see 2019 report (Apdx-173))

\*\* 2019 Report did not have criminal numbers broken down by division and simply listed totals in the last paragraph on page 35 (Apdx-888)

**Legend (source appendix references):**

- A — 2008 report (Apdx-159)
- B — 2008 report (Apdx-159)
- C — 2009 report (Apdx-161)
- D — 2009 Report (Apdx-160)
- E — 2010 Report (Apdx-162)
- F — 2011 Report (Apdx-163)
- G — 2012 Report (Apdx-164)
- H — 2013 Report (Apdx-165-66)
- I — 2014 Report (Apdx-167)
- J — 2014 Report (Apdx-168)
- K — 2015 Report (Apdx-169)
- L — 2016 Report (Apdx-169)
- L — 2017 Report (Apdx-170)
- M — 2018 Report (Apdx-171)
- N — 2019 Report (Apdx-172)
- O — 2019 Report (Apdx-173)
- O — 2020 Report (Apdx-174)
- P — 2020 Report (Apdx-175)
- Q — (Apdx-173)

# COMPUTATIONAL ADDENDUM
## CHART 2

**DISTRICT COURT OF THE VIRGIN ISLANDS**

| YEAR | TOTAL Filed Civil | TOTAL Terminated Civil | NET Civil | TOTAL Filed Criminal | TOTAL Terminated Criminal | NET Criminal |
|------|------|------|------|------|------|------|
| 2008 A | 292 | 414 | -122 | 86 M | 47 | 39 |
| 2009 B | 279 | 482 | -203 | 109 N | 175 | -66 |
| 2010 C | 293 | 351 | -58 | 156 O | 192 | -36 |
| 2011 D | 288 | 362 | -74 | 71 P | 145 | -74 |
| 2012 E | 232 | 247 | -15 | 58 Q | 62 | -4 |
| 2013 F | 258 | 276 | -18 | 103 R | 83 | 20 |
| 2014 G | 241 | 237 | 4 | 102 S | 78 | 24 |
| 2015 H | 189 | 228 | -39 | 80 T | 75 | 5 |
| 2016 I | 193 | 179 | 14 | 136 U | 110 | 26 |
| 2017 J | 154 | 140 | 14 | 103 V | 78 | 25 |
| 2018 K | 171 | 184 | -13 | 80 W | 63 | 17 |
| 2019 L | 182 | 144 | 38 | 93 X | 71 | 22 |
| 2020 L | 233 | 220 | 13 | 68 Y | 96 | -28 |
| Total | | | 13 / -459 | | Total | -30 / -28 |

**Total Civil & Criminal** -489

**Average reduction per year** -37.6154

| | |
|---|---|
| A Apdx-329 | M Apdx-368 |
| B Apdx-332 | N Apdx-371 |
| C Apdx-335 | O Apdx-374 |
| D Apdx-338 | P Apdx-377 |
| E Apdx-341 | Q Apdx-380 |
| F Apdx-344 | R Apdx-383 |
| G Apdx-347 | S Apdx-386 |
| H Apdx-350 | T Apdx-389 |
| I Apdx-353 | U Apdx-392 |
| J Apdx-356 | V Apdx-395 |
| K Apdx-360 | W Apdx-399 |
| L Apdx-364 | X Apdx-403 |
| | Y Apdx-407 |

## JOINT APPENDIX VOL. I – TABLE OF CONTENTS

Notice of Appeal (case no. 3:21-cv-52)............................................................ Apdx-001

Notice of Appeal (case no. 3:21-cv-44)............................................................ Apdx-002

Notice of Appeal (case no. 3:21-cv-43)............................................................ Apdx-003

Notice of Appeal (case no. 3:21-cv-41)............................................................ Apdx-004

Notice of Appeal (case no. 3:21-cv-40)............................................................ Apdx-005

Notice of Appeal (case no. 3:21-cv-39)............................................................ Apdx-006

District Court Order ...................................................................................... Apdx-007

District Court Errata Order ............................................................................ Apdx-010

District Court Memorandum Opinion ............................................................. Apdx-013

Report and Recommendation ......................................................................... Apdx-030

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN**

--------------------------------------------------------------x

B&B MANUFACTURING, INC.,       :     Case No. 3:21-cv-052

        Plaintiff,        :

                        :

    v.                     :

                        :

THE UNITED STATES VIRGIN ISLANDS,   :

        Defendant.       :

--------------------------------------------------------------x

## NOTICE OF APPEAL

**NOTICE** is hereby given that Plaintiff, by and through undersigned counsel, appeals the

August 18, 2022, Order (Doc. # 53), and the August 19, 2022, Errata Order (Doc. # 54), with

related Memorandum Opinion (Doc. # 52), dismissing the above-styled case, all of which to the

United States Court of Appeals for the Third Circuit.

Respectfully Submitted,


By: /s/Joseph A. DiRuzzo, III                 Dated Sept. 8, 2022

Joseph A. DiRuzzo, III

USVI Bar No. 1114

DIRUZZO & COMPANY

401 East Las Olas Blvd., Suite 1400

Ft. Lauderdale, Florida 33301

954.615.1676 (O)

954.827.0340 (F)

jd@diruzzolaw.com


-and-

MICHAEL L. SHEESLEY, P.C.

s/Michael L. Sheesley

Michael L. Sheesley

V.I. Bar #1010

P.O. Box 307728

St. Thomas, VI 00803

Telephone: (412)972-0412

michael@sheesley-law.com

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

-----------------------------------------------------------x
IMPEX TRADING INTERNATIONAL, INC.,   :     Case No. 3:21-cv-044
d/b/a The Sea Chest,                 :
          Plaintiff,         :
     v.                     :
                          :
THE UNITED STATES VIRGIN ISLANDS,   :
          Defendant.      :
-----------------------------------------------------------x

## NOTICE OF APPEAL

**NOTICE** is hereby given that Plaintiff, by and through undersigned counsel, appeals the

August 18, 2022, Order (Doc. # 49), and the August 19, 2022, Errata Order (Doc. # 50), with

related Memorandum Opinion (Doc. # 48), dismissing the above-styled case, all of which to the

United States Court of Appeals for the Third Circuit.

Respectfully Submitted,


By: /s/Joseph A. DiRuzzo, III                   Dated Sept. 8, 2022
Joseph A. DiRuzzo, III
USVI Bar No. 1114
DiRuzzo & Company
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com

-and-

Michael L. Sheesley, P.C.
s/Michael L. Sheesley
Michael L. Sheesley
V.I. Bar #1010
P.O. Box 307728
St. Thomas, VI 00803
Telephone: (412)972-0412
michael@sheesley-law.com

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

------------------------------------------------x

UNITED CORPORATION,              :      Case No. 3:21-cv-043
          Plaintiff,            :
                                    :
    v.                               :
                                    :
THE UNITED STATES VIRGIN ISLANDS,    :
          Defendant.          :

------------------------------------------------x

## NOTICE OF APPEAL

**NOTICE** is hereby given that Plaintiff, by and through undersigned counsel, appeals the

August 18, 2022, Order (Doc. # 48), and the August 19, 2022, Errata Order (Doc. # 49), with

related Memorandum Opinion (Doc. # 47), dismissing the above-styled case, all of which to the

United States Court of Appeals for the Third Circuit.

Respectfully Submitted,


By: /s/Joseph A. DiRuzzo, III                      Dated Sept. 8, 2022
Joseph A. DiRuzzo, III
USVI Bar No. 1114
DiRuzzo & Company
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com

-and-

Michael L. Sheesley, P.C.
s/Michael L. Sheesley
Michael L. Sheesley
V.I. Bar #1010
P.O. Box 307728
St. Thomas, VI 00803
Telephone: (412)972-0412
michael@sheesley-law.com

Apdx-003

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS & ST. JOHN**

-------------------------------------------------x
MSI BUILDING SUPPLIES, INC.,       :      Case No. 3:21-cv-041
        Plaintiff,       :
                           :
    v.                     :
                           :
THE UNITED STATES VIRGIN ISLANDS,  :
        Defendant.       :
-------------------------------------------------x

## NOTICE OF APPEAL

**NOTICE** is hereby given that Plaintiff, by and through undersigned counsel, appeals the

August 18, 2022, Order (Doc. # 49), and the August 19, 2022, Errata Order (Doc. # 50), with

related Memorandum Opinion (Doc. # 48), dismissing the above-styled case, all of which to the

United States Court of Appeals for the Third Circuit.

Respectfully Submitted,


By: /s/Joseph A. DiRuzzo, III                    Dated Sept. 8, 2022
Joseph A. DiRuzzo, III
USVI Bar No. 1114
DIRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com


-and-

MICHAEL L. SHEESLEY, P.C.
s/Michael L. Sheesley
Michael L. Sheesley
V.I. Bar #1010
P.O. Box 307728
St. Thomas, VI 00803
Telephone: (412)972-0412
michael@sheesley-law.com

1

Apdx-004

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

-------------------------------------------------------x
BLUEWATER CONSTRUCTION, INC.,   :     Case No. 3:21-cv-040
         Plaintiff,   :
                    :
    v.                   :
                    :
THE UNITED STATES VIRGIN ISLANDS,   :
         Defendant.   :
-------------------------------------------------------x

## NOTICE OF APPEAL

**NOTICE** is hereby given that Plaintiff, by and through undersigned counsel, appeals the

August 18, 2022, Order (Doc. # 48), and the August 19, 2022, Errata Order (Doc. # 49), with

related Memorandum Opinion (Doc. # 47), dismissing the above-styled case, all of which to the

United States Court of Appeals for the Third Circuit.

Respectfully Submitted,


By: /s/Joseph A. DiRuzzo, III                Dated Sept. 8, 2022
Joseph A. DiRuzzo, III
USVI Bar No. 1114
DiRuzzo & Company
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com

-and-

Michael L. Sheesley, P.C.
s/Michael L. Sheesley
Michael L. Sheesley
V.I. Bar #1010
P.O. Box 307728
St. Thomas, VI 00803
Telephone: (412)972-0412
michael@sheesley-law.com

Apdx-005

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS & ST. JOHN

---------------------------------------------------------------x

APEX CONSTRUCTION COMPANY, INC.     :     Case No. 3:21-cv-039
           Plaintiff,                 :

                          :

      v.                             :

                          :

THE UNITED STATES VIRGIN ISLANDS,     :
           Defendant.           :

---------------------------------------------------------------x

### NOTICE OF APPEAL

**NOTICE** is hereby given that Plaintiff, by and through undersigned counsel, appeals the

August 18, 2022, Order (Doc. # 49), and the August 19, 2022, Errata Order (Doc. # 50), with

related Memorandum Opinion (Doc. # 48), dismissing the above-styled case, all of which to the

United States Court of Appeals for the Third Circuit.

Respectfully Submitted,


By: /s/Joseph A. DiRuzzo, III                           Dated Sept. 8, 2022
Joseph A. DiRuzzo, III
USVI Bar No. 1114
DiRuzzo & Company
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, Florida 33301
954.615.1676 (O)
954.827.0340 (F)
jd@diruzzolaw.com


-and-

Michael L. Sheesley, P.C.
s/Michael L. Sheesley
Michael L. Sheesley
V.I. Bar #1010
P.O. Box 307728
St. Thomas, VI 00803
Telephone: (412)972-0412
michael@sheesley-law.com

Apdx-006

# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

IN RE: EXCISE TAX LITIGATION )

PSMT, LCC,  )

               Plaintiff, )

               v. )        **Case No. 3:19-cv-0118**

THE GOVERNMENT OF THE VIRGIN )
ISLANDS, THE VIRGIN ISLANDS BUREAU )
OF INTERNAL REVENUE, and JOEL A. LEE )
IN HIS CAPACITY AS DIRECTOR OF )
INTERNAL REVENUE, )

               Defendants. )

APEX CONSTRUCTION, INC., )

               Plaintiff, )        **Case No. 3:21-cv-0039**

               v. )

THE UNITED STATES VIRGIN ISLANDS, )

               Defendant. )

BLUEWATER CONSTRUCTION, INC., )

               Plaintiff, )        **Case No. 3:21-cv-0040**

               v. )

THE UNITED STATES VIRGIN ISLANDS, )

               Defendant. )

MSI BUILDING SUPPLIES, INC., )

               Plaintiff, )        **Case No. 3:21-cv-0041**

               v. )

THE UNITED STATES VIRGIN ISLANDS, )

               Defendant. )

UNITED CORPORATION, )

               Plaintiff, )        **Case No. 3:21-cv-0043**

               v. )

THE UNITED STATES VIRGIN ISLANDS, )

               Defendant. )

| | | |
|---|---|---|
| **IMPEX TRADING INTERNATIONAL, INC.,** | ) | |
| **Plaintiff,** | ) | **Case No. 3:21-cv-0044** |
| **v.** | ) | |
| **THE UNITED STATES VIRGIN ISLANDS,** | ) | |
| **Defendant.** | ) | |
| | ) | |
| **B&B MANUFACTURING, INC.,** | ) | |
| **Plaintiff,** | ) | **Case No. 3:21-cv-0052** |
| **v.** | ) | |
| **THE UNITED STATES VIRGIN ISLANDS,** | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

**BEFORE THE COURT** is the Report and Recommendation of the Magistrate Judge in each of the above-captioned cases. Defendants filed timely objections and this Court reviewed the Report and Recommendation *de novo* as to those potions specifically objected to. For the reasons set forth in the Memorandum Opinion of even date, it is hereby

**ORDERED** that the Magistrate Judge's Report and Recommendation is **REJECTED** to the extent that it recommends that tax comity doctrine does not apply in the Virgin Islands; it is further

**ORDERED** that Defendants' motions to dismiss are **GRANTED**; it is further

**ORDERED** that *Apex Construction, Inc. v. U.S. Virgin Islands*, case no. 3:21-cv-0039, is **DISMISSED WITHOUT PREJUDICE** and this case is **CLOSED**; it is further

**ORDERED** that *Bluewater Construction, Inc. v. U.S. Virgin Islands*, case no. 3:21-cv-0040, is **DISMISSED WITHOUT PREJUDICE** and this case is **CLOSED**; it is further

**ORDERED** that *MSI Building Supplies, Inc. v. U.S. Virgin Islands*, case no. 3:21-cv-0041, is **DISMISSED WITHOUT PREJUDICE** and this case is **CLOSED**; it is further

**ORDERED** that *United Corp. v. U.S. Virgin Islands*, case no. 3:21-cv-0043, is **DISMISSED WITHOUT PREJUDICE** and this case is **CLOSED**; it is further

**ORDERED** that *Impex Trading Int'l, Inc. v. U.S. Virgin Islands*, case no. 3:21-cv-0044, is **DISMISSED WITHOUT PREJUDICE** and this case is **CLOSED**; it is further

**ORDERED** that *B&B Manufacturing, Inc. v. U.S. Virgin Islands*, case no. 3:21-cv-0052, is **DISMISSED WITHOUT PREJUDICE** and this case is **CLOSED**; it is further

*In re: Excise Tax Litigation*
ORDER
Page 3 of 3

**ORDERED** that the excise tax claim in *PSMT, LLC v. Gov't of the Virgin Islands, et al.*, case no. 3:19-cv-0118, is **DISMISSED WITHOUT PREJUDICE**; it is further

**ORDERED** that the Magistrate Judge's Report and Recommendation is **ADOPTED** to the extent that it recommends that Plaintiff PSMT, LLC's container tax claim be dismissed; and it is further

**ORDERED** that Plaintiff PSMT, LLC may amend its complaint as to its container tax claim by no later than September 9, 2022. If PSMT files no such amendment, the Court will dismiss *PSMT, LLC v. Gov't of the Virgin Islands, et al.*, case number 3:19-cv-0118.

**DATED:** August 18, 2022                              */s/ Robert A. Molloy*
                                                        **ROBERT A. MOLLOY**
                                                        **Chief Judge**

Apdx-009

**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| IN RE: EXCISE TAX LITIGATION | ) |
| | ) |
| | ) |
| PSMT, LCC, | ) |
|       Plaintiff, | )    Case No. 3:19-cv-0118 |
|       v. | ) |
| THE GOVERNMENT OF THE VIRGIN | ) |
| ISLANDS, THE VIRGIN ISLANDS BUREAU | ) |
| OF INTERNAL REVENUE, and JOEL A. LEE | ) |
| IN HIS CAPACITY AS DIRECTOR OF | ) |
| INTERNAL REVENUE, | ) |
|       Defendants. | ) |
| | ) |
| APEX CONSTRUCTION, INC., | ) |
|       Plaintiff, | )    Case No. 3:21-cv-0039 |
|       v. | ) |
| THE UNITED STATES VIRGIN ISLANDS, | ) |
|       Defendant. | ) |
| | ) |
| BLUEWATER CONSTRUCTION, INC., | ) |
|       Plaintiff, | )    Case No. 3:21-cv-0040 |
|       v. | ) |
| THE UNITED STATES VIRGIN ISLANDS, | ) |
|       Defendant. | ) |
| | ) |
| MSI BUILDING SUPPLIES, INC., | ) |
|       Plaintiff, | ) |
|       v. | )    Case No. 3:21-cv-0041 |
| THE UNITED STATES VIRGIN ISLANDS, | ) |
|       Defendant. | ) |
| | ) |
| UNITED CORPORATION, | ) |
|       Plaintiff, | )    Case No. 3:21-cv-0043 |
|       v. | ) |
| THE UNITED STATES VIRGIN ISLANDS, | ) |
|       Defendant. | ) |

| | | |
|---|---|---|
| **IMPEX TRADING INTERNATIONAL, INC.,** | ) | **Case No. 3:21-cv-0044** |
| **Plaintiff,** | ) | |
| v. | ) | |
| **THE UNITED STATES VIRGIN ISLANDS,** | ) | |
| **Defendant.** | ) | |
| | ) | |
| **B&B MANUFACTURING, INC.,** | ) | **Case No. 3:21-cv-0052** |
| **Plaintiff,** | ) | |
| v. | ) | |
| **THE UNITED STATES VIRGIN ISLANDS,** | ) | |
| **Defendant.** | ) | |

## ERRATA ORDER

**COMES NOW** the Court and issues this Order to correct the following scrivener's errors in the Memorandum Opinion dated August 18, 2022, and the Order of even date in each of the above-captioned matters:

On page 2 of each August 18, 2022 Order, in the first paragraph, line three, delete "potions" and replace with "portions";

The resulting sentence reads: "Defendants filed timely objections and this Court reviewed the Report and Recommendation *de novo* as to those portions specifically objected to."

On page 3 of each August 18, 2022 Memorandum Opinion, in the first paragraph, line 3, delete "Defendant" and replace with "Plaintiff;" and in the first paragraph, line 4, delete "defendants" and replace with "plaintiffs;"

The resulting sentence reads: "**BEFORE THE COURT** is the Report and Recommendation of the Magistrate Judge recommending that the Court grant the Government of the Virgin Islands' (the "GVI") motion to dismiss as to Plaintiff PSMT, LLC's container tax claims and deny GVI's motion to dismiss as the remainder for all above-captioned plaintiffs in this consolidated matter."

On page 8 of each August 18, 2022 Memorandum Opinion, in the first full paragraph, line 1, delete "Defendant" and replace with "Plaintiff;"

The resulting sentence reads: "Plaintiff PSMT, LLC argues that, because Congress did not intend the Tax Injunction Act to extend to the Virgin Islands, "any holding that Congress intended comity to apply in the Virgin Islands no longer makes coherent sense," because the two "do not exist in independent

Apdx-011

vacuums from each other but are meant to work in coordination.""

It is further **ORDERED** that a copy of this Order be served on all counsel of record.

**Dated:** August 19, 2022

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| IN RE: EXCISE TAX LITIGATION | |
| | |
| PSMT, LCC,<br>                    Plaintiff,<br>          v.<br>THE GOVERNMENT OF THE VIRGIN ISLANDS, THE VIRGIN ISLANDS BUREAU OF INTERNAL REVENUE, and JOEL A. LEE IN HIS CAPACITY AS DIRECTOR OF INTERNAL REVENUE,<br>                    Defendants. | Case No. 3:19-cv-0118 |
| APEX CONSTRUCTION, INC.,<br>                    Plaintiff,<br>          v.<br>THE UNITED STATES VIRGIN ISLANDS,<br>                    Defendant. | Case No. 3:21-cv-0039 |
| BLUEWATER CONSTRUCTION, INC.,<br>                    Plaintiff,<br>          v.<br>THE UNITED STATES VIRGIN ISLANDS,<br>                    Defendant. | Case No. 3:21-cv-0040 |
| MSI BUILDING SUPPLIES, INC.,<br>                    Plaintiff,<br>          v.<br>THE UNITED STATES VIRGIN ISLANDS,<br>                    Defendant. | Case No. 3:21-cv-0041 |
| UNITED CORPORATION,<br>                    Plaintiff,<br>          v.<br>THE UNITED STATES VIRGIN ISLANDS,<br>                    Defendant. | Case No. 3:21-cv-0043 |

Apdx-013

*In re: Excise Tax Litigation*
Order
Page 2 of 17

| | | |
|---|---|---|
| **IMPEX TRADING INTERNATIONAL, INC.,** | ) | **Case No. 3:21-cv-0044** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **THE UNITED STATES VIRGIN ISLANDS,** | ) | |
| **Defendant.** | ) | |
| | ) | |
| **B&B MANUFACTURING, INC.,** | ) | **Case No. 3:21-cv-0052** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **THE UNITED STATES VIRGIN ISLANDS,** | ) | |
| **Defendant.** | ) | |

ATTORNEYS:

**Taylor W. Strickling, Esq.**
Marjorie Rawls Roberts, P.C.
St. Thomas, U.S.V.I.
  *For Plaintiff PSMT, LLC,*

**Michael L. Sheesley, Esq.**
MLSPC
St. Thomas, U.S.V.I.
  *For Plaintiffs Apex Construction, Inc., Bluewater Construction, Inc., MSI Building*
  *Supplies, Inc., United Corporation, Impex Trading International, Inc., and B&B*
  *Manufacturing, Inc.,*

**Joseph A. DiRuzzo, Esq.**
DiRuzzo & Company
Ft. Lauderdale, FL
  *For Plaintiffs Apex Construction, Inc., Bluewater Construction, Inc., MSI Building*
  *Supplies, Inc., United Corporation, Impex Trading International, Inc., and B&B*
  *Manufacturing, Inc.,*

**Ariel M. Smith-Francois, Esq.**
**Christopher M. Timmons, Esq.**
Virgin Islands Department of Justice
St. Thomas, U.S.V.I.
  *For Defendants the Government of the Virgin Islands, the Virgin Islands Bureau of*
  *Internal Revenue, and Joel A. Lee in his capacity as Director of Internal Revenue.*

## MEMORANDUM OPINION

### *Molloy, Chief Judge*

**BEFORE THE COURT** is the Report and Recommendation of the Magistrate Judge recommending that the Court grant the Government of the Virgin Islands' (the "GVI") motion to dismiss as to Defendant PSMT, LLC's container tax claims and deny GVI's motion to dismiss as the remainder for all above-captioned defendants in this consolidated matter.[1] Also before the Court are the timely objections thereto filed by the GVI. For the reasons stated below, the Court will reject the Report and Recommendation insofar as it holds that dismissal is inappropriate because tax comity does not apply to the Virgin Islands and adopt the Report and Recommendation as to the remainder.

### I. PROCEDURAL BACKGROUND

These matters stem from the Court's holding in *Reefco Services, Inc. v. Government of the Virgin Islands*, Case No. 3:14-cv-0110. Therein, the Court held that the Government of the Virgin Islands' (the "GVI") application of the excise tax, 33 V.I.C. § 42(a), violated the Commerce Clause of the United States Constitution by discriminating against extraterritorial interests. The Court further held that the GVI was enjoined from collecting excise tax from importers but not local manufacturers, that plaintiff was entitled to a refund of wrongly paid excise taxes, and that the Virgin Islands Bureau of Internal Revenue was required to have this Court approve their proposed rules and regulations for administering the tax going forward. The GVI appealed. On October 7, 2020, the Third Circuit issued an opinion affirming this Court's declaratory and monetary relief ordered on September 28, 2018. The Third Circuit further affirmed in part this Court's November 26, 2018 Memorandum Opinion insofar as the Memorandum Opinion enjoined the Government of the Virgin Islands from collecting excise taxes from importers, but not local manufacturers. The Third Circuit, however, vacated the portion of the November 26, 2018 Order requiring this Court's approval of the GVI's promulgated rules and regulations, and remanded this matter for further proceedings as to whether the excise tax has been assessed against local manufacturers.

---

[1] *See* Report & Recommendation, entered March 10, 2022, in each of the above-captioned matters.

Thereafter, this Court held evidentiary hearings on December 9, 2020, and March 9, 2021. Following each respective hearing, the Court partially lifted the injunction against the GVI to the extent that it enjoined them from collecting excise taxes against local manufacturers only, then later lifted the injunction altogether allowing the GVI to collect excise taxes from all manufacturers. In the time since, the GVI has resumed collecting excise taxes from importers and Virgin Islands manufacturers alike.

Now, plaintiffs, each an importer of goods into the Virgin Islands, generally allege that the GVI wrongly collected excise taxes from each plaintiff in violation of the Commerce Clause of the United States Constitution, and thus plaintiffs are entitled to a refund of those taxes paid. *See generally, e.g., Impex Trading Int'l, Inc. v. The United States Virgin Islands*, Case No. 3:21-cv-0044, ECF No. 1. PSMT seeks a refund of taxes paid between 2016 and 2019[2] and the remaining plaintiffs seek a refund of taxes paid between 2016 and 2019.[3]

The GVI has moved to dismiss each complaint, generally arguing that the plaintiffs lack standing because they have failed to allege a substantially similar competitor who benefitted from the discriminatory tax scheme, and that the doctrine of comity dictates that this Court should defer to the Superior Court of the Virgin Islands in resolving these matters. *See generally, e.g., id.* at ECF No. 11. Plaintiffs disagree, arguing that the Court does, in fact, have jurisdiction, that Plaintiffs have standing, and that GVI should be collaterally estopped from asserting that it does not owe Plaintiffs refunds of their excise taxes paid prior to November 26, 2018. *See generally, e.g., id.* at ECF No. 13.

By Order entered November 18, 2021, the Court referred each of the pending motions to dismiss to the Magistrate Judge to hold proceedings and issue a Report and Recommendation for the disposition of these motions to dismiss. On March 22, 2022, the Magistrate Judge issued her Report and Recommendation. The GVI filed timely objections,

---

[2] ECF No. 1, at 1 in Civil Action No. 19-118. PSMT alleges it made claims for refunds of excise taxes paid on February 8 and 22, and on May 23, 2019, and that the "government has not paid an excise tax refund or otherwise responded to PSMT's refund claims." *Id.* at ¶¶ 17-20. PSMT filed its action on December 22, 2019. PSMT seeks $1,675,402.80. ECF No. 1, at] ¶ 15 in Civil Action No. 19-118.

[3] *See, e.g.,* ECF No. 1, at ¶ 22 in Civil Action No. 21-52. Apex seeks $35,002.49. ECF No. 1, at ¶ 29 in Civil Action No. 21-39. Bluewater seeks $41,529.69. ECF No. 1, at ¶ 29 in Civil Action No. 21-40. MSI seeks $665,743.83. ECF No. 1-1 in Civil Action No. 21-41; ECF No. 1-2 in Civil Action No. 21-41. United seeks $523,554.18. ECF No. 1, at ¶ 59 in Civil Action No. 21-43. Impex seeks $128,210.86. ECF No. 1, at ¶ 23 in Civil Action No. 21-44. B&B seeks $116,260.95. ECF No. 1, at ¶ 26 in Civil Action No. 21-52.

specifically arguing that the Magistrate Judge wrongly interpreted and applied *Great Bay Condo. Owners Ass'n v. Gov't of the V.I.*, Case No. 3:17-cv-0033, 2018 WL 4690372 (D.V.I. Sept. 28, 2018) and that Plaintiffs lack standing because, *inter alia*, they are not in the marine refrigeration business. These objections are now ripe and before the Court.

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 636, "[w]ithin fourteen days after being served with a copy [of the Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). If no party files a timely objection, "the scope of [the Court's] review is far more limited and is conducted under the far more deferential standard of 'plain error.'" *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006) *aff'd*, 276 Fed. App'x 125 (3d Cir. 2008); *see Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) ("While . . . [28 U.S.C. § 636(b)(1)] may not require, in the absence of objections, the district court to review the magistrate's report before accepting it, we believe that the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report.").

When a party files a timely objection, a district court is required to "make a *de novo* determination of those *portions* of the report or *specified* proposed findings or recommendations to which objection is made." *Goney v. Clark*, 749 F.2d 5, 6 (3d Cir. 1984) (quoting 28 U.S.C. § 636(b)(1)) (emphasis added by Third Circuit). By extension, the Court is not required to perform a *de novo* review where either the filed objections are only general in nature or of portions of the Report and Recommendation not specifically objected to. *See id.* at 6-7 ("We are satisfied that providing a complete *de novo* determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process.").

## III. DISCUSSION

Here, the GVI specifically argues that the Magistrate Judge erred by finding that the tax comity doctrine is inapplicable to the Virgin Islands, and instead should have found it

applicable for the reasons set forth in *Great Bay*. *See* ECF No. 49, at 2-7.[4] The GVI further objects to the Magistrate Judge's finding that each of the Plaintiffs have standing in their respective cases, specifically arguing that Plaintiffs did not allege competition between in-state and out-of-state economic interests,[5] that the Third Circuit's decision in *Reefco* is not precedential and should not be treated as such, and that Plaintiffs are not in the marine refrigeration business. *See id.* at 7-12. Accordingly, to the extent that these objections are raised with sufficient specificity, they will be reviewed *de novo* and any other portion of the Magistrate Judge's Report and Recommendation shall only be subject to the more deferential plain error standard.

### A. The Magistrate Judge Erred in Predicting that the Comity Doctrine would not Apply to the Virgin Islands.

In its first objection, the GVI argues that the Magistrate Judge erred in finding that the tax comity doctrine is inapplicable to these proceedings. Specifically, the GVI argues that the Magistrate Judge erred by opining that the Third Circuit would reject this Court's prior ruling, and that the Third Circuit would hold that the tax comity doctrine does not apply to Virgin Islands. ECF No. 49, at 2-3 (citing *American Resort*, 848 F. App'x 79 (3d Cir. 2021)). GVI argues that the Magistrate Judge erred by basing this conclusion on the fact that the Third Circuit never reached the tax comity issue in *American Resort.*

---

[4] For the sake of expedience, all ECF citations herein shall be made to the docket of *B&B Manufacturing, Inc. v. United States Virgin Islands*, Case No. 3:21-cv-0052 unless otherwise noted. All complaints in this matter are substantively identical, apart from PSMT, LLC's, which alleges an additional cause of action regarding the Virgin Islands container tax. The Magistrate Judge entered her Report and Recommendation in each of the above-captioned cases after the pending motions to dismiss were consolidated and referred to her. The only objections filed were by the GVI regarding the excise tax. No objections were filed regarding the Magistrate Judge's recommendation that PSMT's container tax claim be dismissed. Therefore, the Court's review of any individual objection is applicable to the remainder of the above-captioned cases.

[5] As a preliminary matter, the GVI's standing argument is without merit. As concisely stated by the Magistrate Judge, Plaintiffs allege that the USVI implemented 33 V.I.C. § 42 in a constitutionally impermissible manner. They allege that as a result, they paid an unlawful tax and the USVI wrongfully deprived them of money between 2016 and 2019. They further allege that the deprivation is ongoing. The alleged harm is therefore concrete, particularized, and actual. Plaintiffs allege a causal connection between their injury and the conduct complained of. Lastly, if the Court finds in plaintiffs' favor and orders the USVI to issue the refunds sought, plaintiffs' injury would be redressed. Therefore, Plaintiffs have sufficiently pled standing and this Court has subject matter jurisdiction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (To establish standing, "an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.") (quotation marks omitted). The Court will adopt the Magistrate Judge's recommendation that the GVI's motion to dismiss under Fed. R. Civ. P. 12(b)(1) be denied.

1. **Tax Comity**

The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction. The doctrine reflects

> "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways."

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 112 (1981) (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)). Comity's constraint has particular force when district courts are asked to pass on the constitutionality of state taxation of commercial activity. This is because "[i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421-22 (2010) (quoting *Dows v. Chicago*, 11 Wall. 108, 110 (1871)).

This doctrine is longstanding. The Supreme Court wrote "more than a century ago" that "[a]n examination of [their] decisions. . . shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused [it] to refrain from doing so in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Id.* at 422 (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 282 (1909)); *accord Matthews v. Rodgers*, 284 U.S. 521, 525-26 (1932) (So long as the state remedy was "plain, adequate, and complete," the "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.").

"There is no significant difference between whether a remedy is plain, adequate, and complete and whether a remedy is plain, speedy, and efficient." *Great Bay,* Case No. 3:17-cv-0033, 2018 WL 4690372, at *3 (citing *Fair Assessment*, 454 U.S. at 137 ("We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are "plain, adequate, and complete," as that phrase has been used in

articulating the doctrine of equitable restraint, and those which are "plain, speedy and efficient," within the meaning of § 1341.")); *see also Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 525 & n. 33 (1981) (holding that not "every wrinkle of federal equity practice" addressing whether a remedy was plain, adequate, and complete was codified by Congress in the Tax Injunction Act, but further specifying that "prior federal equity cases" may be "instructive on whether a state remedy is 'plain, speedy and efficient' ").

### 2. <u>Whether Tax Comity Applies to the Virgin Islands</u>

Defendant PSMT, LLC argues that, because Congress did not intend the Tax Injunction Act to extend to the Virgin Islands, "any holding that Congress intended comity to apply in the Virgin Islands no longer makes coherent sense," because the two "do not exist in independent vacuums from each other but are meant to work in coordination." *PSMT, LLC v. Gov't of the Virgin Islands*, Case No. 3:19-cv-00118, ECF No. 45, at 4. PSMT cites to *Levin* for support despite its direct contradiction. To the contrary, the *Levin* Court wrote, "[o]ur post-[Tax Injunction] Act decisions, however, confirm the continuing sway of comity considerations, independent of the Act." *Levin*, 560 U.S. at 423. The Court further emphasized that it "could not have thought Congress intended to cabin the comity doctrine, for [it] went on to instruct dismissal in *Great Lakes* on comity grounds without deciding whether the [Tax Injunction] Act reached declaratory judgment actions." *Id.* at 423-24.

Later, in *Fair Assessment*, the Supreme Court ruled "based on comity concerns, that 42 U.S.C. § 1983 does not permit federal courts to award damages in state taxation cases when state law provides an adequate remedy." *Id.* at 424 (citing *Fair Assessment*, 454 U.S. at 116). The Court made clear that "the principle of comity which predated the [Tax Injunction] Act was not restricted by its passage." *Fair Assessment*, 454 U.S. at 110. The Supreme Court has explicitly said that "the [Tax Injunction Act] may be best understood as but a partial codification of the federal reluctance to interfere with state taxation." *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 590 (1995).

Further, Supreme Court precedent "affirm[s] that the comity doctrine is more embracive than the [Tax Injunction Act]. . . ." *Levin*, 560 U.S. at 424. Thus, it raises no alarm that, even if Congress did not intend for the Tax Injunction Act to reach the Virgin Islands, comity doctrine may well still apply. Considering that the Supreme Court has repeatedly and

directly contradicted PSMT's assertion that the principle of comity cannot exist without the Tax Injunction Act, this Court finds no merit in PSMT's argument.

As discussed above, tax comity doctrine is rooted in principles of federalism, meaning that comity is applied where a state's sovereign rights give federal courts reason to pause in imposing remedies upon the states. *See Fair Assessment*, 454 U.S. at 103 ("[The Tax Injunction Act] and the decisions of this Court which preceded it, reflect the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." (collecting cases)).

Importantly, the GVI's authority does not derive from the Constitution, but rather from Congress, meaning that principles of federalism do not apply to the territory in the same absolute terms that they do to the states. *See Bluebeard's Castle, Inc. v. Gov't of the Virgin Islands*, 321 F.3d 394, 401 (3d Cir. 2003) ("While federalism principles do not apply directly as a result of the Virgin Islands' sovereignty, sensitivity to the division between federal and territorial power in this area seems appropriate, given Congress's choice to treat Virgin Islands law – including its taxation regime – with much of the independence of state law. This counsels in favor of eschewing a broad interpretation of the federal rights created by § 1401a that are justiciable in District Court."). In determining whether principles of federalism apply in a given arena, the Third Circuit has employed the approach of deciphering whether Congress intended to delegate such authority to the GVI. *Cf., e.g., Parrott v. Gov't of the Virgin Islands*, 230 F.3d 615, 623 (3d Cir. 2000) ("Thus, while Congress has elected, for administrative purposes, to treat the Virgin Islands as a separate sovereign, . . . the constitutional relationship between the territories and the federal government remains unified. . .." (internal citation omitted)). Accordingly, the relevant question here is whether Congress expressly delegated authority over matters of taxation to the Government of the Virgin Islands.

In *Bluebeard's Castle*, the Third Circuit ultimately held that principles of federalism did not apply in that case because Congress had entered the field of local property taxation. *See Bluebeard's Castle*, 321 F.3d at 400-01. As the Court previously found in *Great Bay*, the Court again finds that there are two plausible interpretations of this decision: "(1) that after the 1984 amendments, whenever the *Court has federal question jurisdiction*, comity or

federalism-like concerns do not apply, or (2) that after the 1984 amendments, whenever *Congress has entered the taxation field*,[6] comity or federalism-like concerns do not apply." *Great Bay*, 2018 WL 4690372, at *10 (emphasis in original). Because the first interpretation is irreconcilable with other decisions extending similar federalism principles to the territory, the Court finds that the second interpretation is sounder. *See, e.g., Edwards v. HOVENSA, LLC*, 497 F.3d 355, 360 (3d Cir. 2007) ("Now that § 1613 mandates that the relations between courts established by laws of the United States, e.g., the Revised Organic Act, and courts established by local law should mirror the relations between state and federal courts, we conclude that § 1613 makes the Erie doctrine and the Rules of Decision Act applicable to the District Court of the Virgin Islands."); *see also Ramirez v. Puerto Rico Fire Svc.*, 715 F.2d 694, 697 (1st Cir. 1983) ("Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects.").

Indeed, the Third Circuit has broadly stated that "[w]e see no reason not to incorporate the federalism principles applicable throughout the circuit into our relationship with the Virgin Islands courts." *Edwards*, 497 F.3d at 360. The Third Circuit has further corroborated this interpretation, extending other comity-based abstention doctrines to the Virgin Islands. *See, e.g., Williams v. Gov't of Virgin Islands Bd. of Med. Examiners*, 360 F. App'x 297, 301 (3d Cir. 2010) (holding that the *Younger* abstention doctrine applies in the Virgin Islands); *Kendall v. Russell*, 572 F.3d 126, 130 n. 3 (3d Cir. 2009) (same).

The instant case is readily distinguishable from the *Bluebeard's Castle* holding. In *Bluebeard's Castle*, the Third Circuit based its decision on the fact that the Virgin Islands property tax system was "partially a federal tax system, and it is not apparent that the federal government should adopt a hands-off approach to the federal aspects of a hybrid federal/territorial system." *Bluebeard's Castle*, 321 F.3d at 400. "To be sure, property tax law in the Virgin Islands is, for the most part, 'local' law, just as it is in the several states. (citation omitted). But its local character derives from Congress. To the limited extent that Congress has entered the field and instituted its own substantive requirements, the local character of

---

[6] For instance, by specifying that the District Court has exclusive jurisdiction over income tax proceedings. *See* 48 U.S.C. § 1612(a) ("The District Court of the Virgin Islands shall have exclusive jurisdiction over all criminal and civil proceedings in the Virgin Islands with respect to the income tax laws applicable to the Virgin Islands . . ..").

property taxation in the Virgin Islands has been altered." *Id.* Therefore, because Congress had entered the field in legislating Virgin Islands property taxes, the application of comity was improper.

Here, however, no such statutory regulation of the territory's excise tax has been imposed by Congress. Accordingly, because Congress has not entered the field of taxation regarding the Virgin Islands' excise tax, the Third Circuit's reasoning in *Bluebeard's Castle* is inapposite in the context of this dispute.

As such, the Court agrees with its previous decision in *Great Bay* and finds that the Revised Organic Act and Third Circuit precedent counsels in favor of a holding that the tax comity doctrine applies to the territory under appropriate circumstances. Therefore, a plaintiff seeking injunctive or declaratory relief or damages with respect to a local tax imposed on them by the Government of the Virgin Islands, "they may only proceed in this Court if: (1) Congress has entered the field and the plaintiffs are seeking to enforce such a federally-created right, or (2) a plain, adequate, and complete remedy is not available in the local courts." *Great Bay*, 2018 WL 4690372, at *12. To the extent that the Magistrate Judge recommends that the tax comity doctrine does not apply to the Virgin Islands, that recommendation is rejected.

### 3. Applying tax comity to these cases

Having held that the tax comity doctrine applies to the Virgin Islands, the Court must now determine whether that doctrine properly applies to this case. As a threshold matter, the Court must determine whether the excise tax is, in fact, a tax. *Cf. Robinson Protective Alarm Co. v. City of Phila.*, 581 F.2d 371, 376 (3d Cir. 1978) (drawing a distinction between "taxes" and "fees" for purposes of applying the Tax Injunction Act and its underlying principles of federalism and comity).

### a. Classification as a Tax

In *Robinson Protective Alarm*, the Third Circuit held that the challenged ordinance was a tax, and thus subject to the Tax Injunction Act, because it "is a revenue raising measure collected annually in a manner similar to other gross receipts levies. From the record it appears that moneys collected are added to the public fisc, rather than applied exclusively to contractual services owed central alarm station companies." *Id.* The Third Circuit went on to

conclude that "[a]nticipatory federal adjudication will clearly interfere with the City's collection of its revenues." *Id.*

Other appellate courts have addressed this issue. The Fourth Circuit has distinguished between taxes and fees by stating, "The 'classic tax' is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large." *DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 125 (4th Cir. 2008) (internal citation omitted). This is compared to the "classic fee," which is "imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise 'money placed in a special fund to defray the agency's regulation-related expenses.'" *Id.* Accordingly, the Fourth Circuit weighs three factors: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." *Id.* Recognizing that this balancing test may produce mixed results, the Fourth Circuit instructs, "When this inquiry places the charge somewhere between the 'classic tax' and the 'classic fee,' it is the purpose behind the statute that imposes the charge, as reflected in the ultimate use of its proceeds, that is the most important factor." *Id.*

Here, the various complaints in this matter allege that the excise tax is assessed by the Bureau of Internal Revenue. *See generally B&B Manufacturing*, Case No. 3:21-cv-0052, ECF No. 1; *PSMT*, Case No. 3:19-cv-0118, ECF No. 1. A cursory review of the excise tax statute reveals that the subject population is, "Every individual and every firm, corporation and other association doing business in the Virgin Islands, except those specially taxed, exempted or excluded." 33 V.I.C. § 42(a). While there is no evidence on these records regarding what specific purpose is served by the excise tax, the statute indicates that a portion of excise tax revenues from certain sources are earmarked as "designated advance disposal fees" for Waste Management Authority Programs. 33 V.I.C. § 42(f). The code is silent as to the remainder. The Court infers that this legislative silence indicates that the remainder of collected excise taxes are for unspecified general revenue applications.

Accordingly, the Court is satisfied, that the excise tax is, perhaps tautologously, a tax. Therefore, the Court holds that the doctrine of tax comity applies to the excise tax.

### b. Plaintiffs' Claims

The Court will now address whether the tax comity doctrine applies to the specific claims raised by the plaintiffs in these consolidated actions, and if so, whether it prevents the Court from proceeding on these claims. Plaintiffs here generally allege that they wrongly paid various sums under the previously unconstitutional excise tax regime, which violated the Commerce Clause in assessing the tax only on importers, while not enforcing the tax against local manufacturers.

A plaintiff in any state in the United States could challenge the enforcement of a state tax in federal court only if the state does not provide remedies that are plain, adequate, and complete. *See, e.g., Fair Assessment*, 454 U.S. at 116. As discussed above, this Court finds that, absent Congressional entry into the arena of Virgin Islands excise tax, the rights and limitations of Virgin Islands plaintiffs should not be interpreted any differently. Accordingly, the plaintiffs may only proceed with this action if a plain, adequate, and complete remedy is not available in the local courts. *See id.* Without prescribing a balancing test, the Third Circuit and the Supreme Court have set forth several factors for determining whether a potential state remedy is plain adequate, and complete. Specifically:

> "[W]hether: (1) the challenged law concerned 'commercial matters over which' the state 'enjoys wide regulatory latitude'; (2) the suit requires adjudicating 'any fundamental right or classification' to which heightened scrutiny applies; (3) the state courts are 'better positioned than their federal counterparts to correct any violation' and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect."

*Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App'x 527, 531 n. 8 (3d Cir. 2015) (citing *Levin*, 560 U.S. at 431–32).[7] "Individually, these considerations may not compel forbearance

---

[7] Notably, *Z & R Cab* directly contradicts another of PSMT's arguments. PSMT argues that comity "should nonetheless not apply to excise tax refund claims. . ." because the constitutionality of the tax has already been decided. *PSMT*, Case No. 3:19-cv-0118, ECF No. 45, at 5. However, *Z & R Cab* involved a federal suit wherein plaintiff sought a refund of a Philadelphia tax that had already been declared unconstitutional and unenforceable, and resulted in the Third Circuit remanding the case to the district court to determine whether comity should apply. *See generally Z & R Cab*, 616 F. App'x 527. The Eastern District of Pennsylvania went on to dismiss the case on comity grounds without objection or appeal from the parties. *See generally Z & R Cab, LLC v. Philadelphia Parking Authority*, Case No. 2:13-cv-06173, ECF No. 24 (E.D. Pa. July 22, 2015). Thus, PSMT's assertion that "comity doctrine by its own terms does not apply to the purely retrospective relief claimed with respect to the old excise tax" finds no support in law. *PSMT*, ECF No. 45, at 6.

on the part of federal district courts; in combination, however, they demand deference to the state adjudicative process." *Levin*, 560 U.S. at 432. The burden of showing that the state remedy is insufficient lies with the plaintiffs. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (holding, with respect to *Younger* abstention, that "the burden . . . rests on the federal plaintiff to show "that state procedural law barred presentation of [its] claims" ") (quoting *Moore v. Sims*, 442 U.S. 415, 432).

PSMT filed the sole response to the GVI's objections and did not directly address whether there was a plain, adequate, and complete state remedy. However, PSMT incorporated its "briefing on the subject [from] its Response in Opposition to Defendants' Motion to Dismiss (ECF #14) and its Closing Brief (ECF #41)." *PSMT*, Case No. 3:19-cv-0118, ECF No. 45, at 6. In its Closing Brief, PSMT argues that the GVI is in dire financial conditions, that there would be significant delay in the payment of any due refund, as is the case with nearly *all* tax refunds in the territory, that the Bureau of Internal Revenue has shown a past and present willingness to continue collecting an unconstitutional tax absent an injunction, and that PSMT's prospective relief will depend on the "whims of the political branches of government." *PSMT*, Case No. 3:19-cv-0118, ECF No. 41, at 4-8. The Court is not convinced, however, that a federal remedy is any better suited for forcing refunds than one imposed by Virgin Islands courts. Especially where, as PSMT recognizes, that "the government does not have legal authority to obey the judgment without first going to the Legislature of the Virgin Islands and requesting an appropriation. . .." *Id.* at 8.

Here, the excise tax concerns "commercial matters over which [the Virgin Islands] enjoys wide regulatory latitude." *Levin*, 560 U.S. at 431. This action does not require the adjudication of any fundamental right to which heightened scrutiny applies – to the contrary, PSMT concedes that the constitutional questions have already been adjudicated and all that remains is the refund of PSMT's undoubtedly wrongly paid taxes. *PSMT*, Case No. 3:19-cv-0118, ECF No. 45, at 5. Especially considering PSMT's argument that any refund will require a commensurate appropriation from the Virgin Islands Legislature, Virgin Islands courts "are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative preferences. . .." *Levin*, 560 U.S. at 431-32. The first three factors counsel in favor of abstention. As to the final consideration, there is a single adequate

Case: 22-2075 Document: 16 Page: 79 Date Filed: 01/26/2023
Case 1:21-cv-00050-RAM Document 16 Page: 79 Filed 01/26/2023 of 17

In re: Excise Tax Litigation
Order
Page 15 of 17

remedy that Virgin Islands courts could fashion in this case, a refund to the aggrieved plaintiffs. It is unclear how the Third Circuit's fourth factor applies, considering that the constitutional defect was a now-rectified Commerce Clause violation for which the plaintiffs seek monetary damages. However, it is clear that these claims for relief "risk disrupting state tax administration." *Id.* at 417 (citing *Fair Assessment*, 454 U.S. 100). This is precisely the type of disruption that the comity doctrine urges federal courts to restrain from. *Id.* Thus, the Court finds that each of the *Z & R Cab* factors counsel in favor of abstaining from hearing this case.[8]

Plaintiffs further argue that, under the doctrine of offensive non-mutual collateral estoppel, or issue preclusion, that the Court should not reconsider issues of law and fact that were previously resolved by the Court and the Third Circuit in the *Reefco* litigation. *See, e.g.,* ECF No. 10, at 4-7. The GVI contends that the doctrine does not apply. *See, e.g.,* ECF No. 13, at 15-20. The requirements of issue preclusion are satisfied where the "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Karns v. Shanahan,* 879 F.3d 504, 514 n. 3 (3d Cir. 2018) (quoting *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n,* 342 F.3d 242, 252 (3d Cir. 2003)) (alterations omitted).

The problem, however, is that plaintiffs are attempting to assert offensive non-mutual collateral estoppel against the GVI. This doctrine simply does not apply to the GVI. *Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.*, 768 F.2d 1558, 1579 (11th Cir. 1985) ("We hold that the rationale outlined by the Supreme Court in *Mendoza* for not applying nonmutual collateral estoppel against the government is equally applicable to state governments. Indeed, we take notice that the Supreme Court in reaching its holding did not differentiate between federal governmental interests and state government interests, nor

---

[8] The Court notes that, although it may have applied to the *Reefco* litigation, tax comity was not directly addressed either by this Court or the Third Circuit. *See generally Reefco*, Case No. 3:14-cv-0110, ECF No. 80 (this Court's memorandum opinion); *Reefco*, Case No. 3:14-cv-0110, ECF No. 131-1 (opinion of the Third Circuit). This may well be because the issue was not raised in the parties' trial briefs prior to the Court's ruling. *See generally Reefco*, Case No. 3:14-cv-0110, ECF Nos. 75, 76.

was there anything to suggest that the concerns expressed by the Supreme Court were peculiar to the federal government.").

Admittedly, the GVI's legal status is more ambiguous than that of a state government's due to the Virgin Islands' status as a territory. However, the Court need not delve into this distinction for these purposes. Two possible legal outcomes exist: either the Virgin Islands is treated as a unified entity with the federal government, or the Virgin Islands is treated as a state for purposes of determining whether offense non-mutual collateral estoppel applies. *Compare Parrott*, 230 F.3d at 623 ("Thus, while Congress has elected, for administrative purposes, to treat the Virgin Islands as a separate sovereign, . . . the constitutional relationship between the territories and the federal government remains unified. . .." (internal citation omitted)) *with, e.g., Edwards*, 497 F.3d at 360 ("We see no reason not to incorporate the federalism principles applicable throughout the circuit into our relationship with the Virgin Islands courts."). Regardless of which outcome is correct, the doctrine is barred. *See U.S. v. Mendoza*, 564 U.S. 154, 164 (1984) ("We accordingly hold that the Court of Appeals was wrong in applying nonmutual collateral estoppel against the government in this case."). Thus, plaintiffs' assertion that offensive nonmutual collateral estoppel should apply to this case is without merit.

### B. *Remainder of the Magistrate Judge's Report and Recommendation*

Because the GVI has succeeded on its comity objection to the Magistrate Judge's Report and Recommendation, the Court finds the remainder of GVI's objections moot and will decline to address them. Having determined that the GVI is entitled to dismissal of plaintiffs' excise tax claims on comity grounds, the only remaining count in these consolidated cases is PSMT's container tax claim.

In her Report and Recommendation, the Magistrate Judge held that "PSMT alleges no facts to explain how this tax discriminates or otherwise violates [Commerce Clause] principles." *PSMT*, Case No. 3:19-cv-0118, ECF No. 42, at 19. The Magistrate Judge further held that "PSMT fails to allege an injury to any vessel or representative of a vessel," "fails to specify whether the container tax is an impost or a duty,[ ] and fails to allege or even hint at how the tax violates the [Tonnage] clause." *Id.* Therefore, the Magistrate Judge found that PSMT had failed to state a claim on their container tax count and recommends dismissal.

PSMT filed no objection to Magistrate Judge's recommendation of the dismissal of its container tax claim. Therefore, "the scope of [the Court's] review is far more limited and is conducted under the far more deferential standard of 'plain error'." *Tice*, 425 F. Supp. 2d at 680 *aff'd*, 276 Fed. App'x 125; *see Henderson*, 812 F.2d at 878 ("While . . . [28 U.S.C. § 636(b)(1)] may not require, in the absence of objections, the district court to review the magistrate's report before accepting it, we believe that the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report."). Having reviewed the Report and Recommendation as to PSMT's container tax claim for plain error, and finding none, the Court will adopt that portion of the Magistrate Judge's Report and Recommendation.

### IV. CONCLUSION

For the reasons set forth above, the Court will reject the Report and Recommendation of the Magistrate Judge as to her finding that tax comity doctrine does not apply to the Virgin Islands. The Court finds that tax comity applies to the Virgin Islands, that tax comity applies to the instant cases, and that tax comity counsels in favor of dismissal of these cases so that they may be resolved in Virgin Islands courts. As to the Magistrate Judge's recommendation that PSMT's container tax claim be dismissed, the Court finds no clear error and will adopt the Report and Recommendation as to that count. Accordingly, the Court will dismiss this matter in its entirety so that plaintiffs may seek their remedies in Virgin Islands courts. An appropriate Order follows.

**Dated:** August 18, 2022

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**

Apdx-029

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| IN RE: EXCISE TAX LITIGATION ) | |
| ————————————————— ) | |
| ) | |
| PSMT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 2019-118 |
| ) | |
| THE GOVERNMENT OF THE VIRGIN ISLANDS, ) | |
| THE VIRGIN ISLANDS BUREAU OF INTERNAL ) | |
| REVENUE, and JOEL A. LEE IN HIS CAPACITY ) | |
| AS DIRECTOR OF INTERNAL REVENUE, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ————————————————— ) | |
| ) | |
| APEX CONSTRUCTION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 2021-39 |
| ) | |
| THE UNITED STATES VIRGIN ISLANDS, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ————————————————— ) | |
| ) | |
| BLUEWATER CONSTRUCTION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 2021-40 |
| ) | |
| THE UNITED STATES VIRGIN ISLANDS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

MSI BUILDING SUPPLIES, INC., )
)
   Plaintiff, )
)
   vs. )
)
THE UNITED STATES VIRGIN ISLANDS, )
)
   Defendant. )
)

Civil No. 2021-41

UNITED CORPORATION, )
)
   Plaintiff, )
)
   vs. )
)
THE UNITED STATES VIRGIN ISLANDS, )
)
   Defendant. )
)

Civil No. 2021-43

IMPEX TRADING INTERNATIONAL, INC., )
)
   Plaintiff, )
)
   vs. )
)
THE UNITED STATES VIRGIN ISLANDS, )
)
   Defendant. )
)

Civil No. 2021-44

B&B MANUFACTURING, INC., )
)
   Plaintiff, )
)
   vs. )
)
THE UNITED STATES VIRGIN ISLANDS, )
)
   Defendant. )
)

Civil No. 2021-52

## REPORT AND RECOMMENDATION

Before the Court are the United States Virgin Islands' motions to dismiss in each of the captioned cases.[1]   On February 17, 2022, after the motions were fully briefed, the Court held an evidentiary hearing and heard oral argument.   The parties made additional written submissions thereafter.   The motions are thus ripe for decision.

## I.    BACKGROUND

A.    As to All Plaintiffs

Plaintiffs are seven Virgin Islands businesses that regularly import goods.[2]   The USVI, which is named as a defendant in each case,[3] is "an unincorporated territory of the United States of America."[4]   In these actions, plaintiffs seek a refund of excise taxes paid to the USVI pursuant to 33 V.I.C. § 42, a Virgin Islands statute.[5]   PSMT seeks a refund of taxes paid between 2016 and

---

[1]   On November 18, 2021, the cases were consolidated and referred to the undersigned for a Report and Recommendation on the pending motions to dismiss.   *See, e.g.*, [ECF 14] in Civil Action No. 21-52.

[2]   PSMT, LLC is a Virgin Islands limited liability company that imports "medicines, household goods, electronics, cosmetics, mattresses, carbonated and other beverages, and other grocery items."   Compl. [ECF 1] ¶¶ 1, 14 in Civil Action No. 19-118.   Apex Construction, Inc. and Bluewater Construction, Inc. are construction companies operating in the USVI that regularly import items.   Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-39; Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-40.   MSI Building Supplies, Inc. and B&B Manufacturing, Inc. operate building supply stores on St. Thomas and regularly import items.   Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-41; Compl. [ECF 1] ¶¶ 19, 21 in Civil Action No. 21-52.   United Corporation operates a grocery store on St. Croix and regularly imports items.   Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-43.   Impex Trading International, Inc. operates a retail merchandise store on St. Thomas and regularly imports items.   Compl. [ECF 1] ¶¶ 19, 20 in Civil Action No. 21-44.

[3]   In Civil Action No. 19-118, plaintiff names as additional defendants the Virgin Islands Bureau of Internal Revenue and its director.   Compl. [ECF 1] ¶¶ 3, 4 in Civil Action No. 19-118.

[4]   48 U.S.C.A. § 1541(a).

[5]   *See, e.g.*, Compl. [ECF 1] ¶ 22 in Civil Action No. 21-52.   Plaintiff B&B alleges it filed a claim for refund on December 17, 2020, which the government has not disallowed or disputed, but which it has failed to pay.   *Id.* ¶¶ 26, 27, 29.   Plaintiff Apex avers it filed a claim for refund on January 31, 2019, which the government has not disallowed or disputed, but which it has failed to pay.   Compl. [ECF 1] ¶¶ 26, 27, 29 in Civil Action No. 21-39.   Plaintiff Bluewater contends it filed a claim for refund on January 31, 2019, which the government has not disallowed

*In re: Excise Tax Litigation*
Page 4

2019;[6] the remaining plaintiffs seeks a refund of taxes paid between 2016 and 2018.[7]    Plaintiffs

contend that although the law is facially neutral in that it taxes both imported goods and goods

produced in the Territory, because the USVI only collected the tax on imported goods during the

relevant time period, the law—as then implemented—violated the United States Constitution's

Commerce Clause.[8]    Plaintiffs thus urge this Court to rule in their favor and award the tax refunds

sought,[9] noting that the District Court of the Virgin Islands did so previously in the case of *Reefco*

*Services, Inc. v. Government of the Virgin Islands*,[10]    a case involving a challenge to the same local

statute brought by a different plaintiff.[11]    Moreover, according to plaintiffs, the Court should

collaterally estop the USVI from relitigating the same issues in this case.[12]

---

or disputed, but which it has failed to pay.    Compl. [ECF 1] ¶¶ 24, 25, 27 in Civil Action No. 21-40.    Plaintiff MSI alleges it filed claims for refund on April 2, 2019, and November 2, 2020, which the government has not disallowed or disputed, but which it has failed to pay.    Compl. [ECF 1] ¶¶ 25-26, 28, 30, 31, 33 in Civil Action No. 21-41. Plaintiff United alleges it filed claims for refund on April 25, 2019, March 23, 2019, June 10, 2019, February 24, 2020, and November 5, 2020, which the government has not disallowed or disputed, but which it has failed to pay. Compl. [ECF 1] ¶¶ 24-57 in Civil Action No. 21-43.    Impex avers it filed a claim for refund on November 16, 2020, which the government has not disallowed or disputed, but which it has failed to pay.    Compl. [ECF 1] ¶¶ 25, 26, 28 in Civil Action No. 21-44.    These six plaintiffs filed their cases between April 26 and June 18, 2021.

    [6]    Compl. [ECF 1] at 1 in Civil Action No. 19-118.    PSMT alleges it made claims for refunds of excise taxes paid on February 8 and 22, and on May 23, 2019, and that the "government has not paid an excise tax refund or otherwise responded to PSMT's refund claims."    *Id.* ¶¶ 17-20.    PSMT filed its action on December 22, 2019.

    [7]    *See, e.g.*, Compl. [ECF 1] ¶ 22 in Civil Action No. 21-52.

    [8]    *See, e.g.*, *id.* ¶¶ 8-11.

    [9]    PSMT seeks $1,675,402.80.    Compl. [ECF 1] ¶ 15 in Civil Action No. 19-118.    Apex seeks $35,002.49. Compl. [ECF 1] ¶ 29 in Civil Action No. 21-39.    Bluewater seeks $41,529.69.    Compl. [ECF 1] ¶ 29 in Civil Action No. 21-40.    MSI seeks $665,743.83.    Compl. [ECF 1-1] in Civil Action No. 21-41; Compl. [ECF 1-2] in Civil Action No. 21-41.    United seeks $523,554.18.    Compl. [ECF 1] ¶ 59 in Civil Action No. 21-43.    Impex seeks $128,210.86. Compl. [ECF 1] ¶ 23 in Civil Action No. 21-44.    B&B seeks $116,260.95.    Compl. [ECF 1] ¶ 26 in Civil Action No. 21-52.

    [10]    2018 WL 4690366 (D.V.I. Sept. 28, 2018), *aff'd in part, vacated in part, and remanded*, 830 F. App'x 81 (3d Cir. 2020).

    [11]    *See, e.g.*, Compl. [ECF 1] ¶¶ 1, 2 in Civil Action No. 21-52.

    [12]    *See, e.g.*, [ECF 10] at 4-7 in Civil Action No. 21-52.

The USVI seeks dismissal on various grounds. First, the USVI contends that either the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because plaintiffs lack standing, or dismissal is appropriate under Rule 12(b)(6) because, by failing to allege a "cognizable constitutional injury," plaintiffs have failed to state a claim upon which relief may be granted.[13] Alternatively, the USVI contends that even if plaintiffs have stated a viable constitutional claim—not under the Commerce Clause but under the so-called Dormant Commerce Clause—the Court should defer to the territorial courts pursuant to the tax comity doctrine.[14] Lastly, the USVI challenges plaintiffs' assertion that the doctrine of non-mutual collateral estoppel applies.[15]

## B.   Issues Unique to PSMT

PSMT seeks not only a refund of the excise taxes it paid between 2016 and 2019, but also a refund of the container taxes it paid to the USVI during this same period pursuant to 33 V.I.C. § 75, another Virgin Islands statute.[16] PSMT contends that it is a "regular importer of containers of goods . . . subject to the territorial container tax,"[17] including goods subject to and exempt from the excise tax.[18] PSMT seeks a refund for the container taxes it paid because it alleges the tax violates Commerce Clause, Tonnage Clause, and Import-Export Clause principles.[19] Further,

---

[13]  *See, e.g.*, [ECF 8] at 1 in Civil Action No. 21-52.

[14]  *See, e.g.*, *id.* at 7-10.

[15]  *See, e.g.*, [ECF 13] at 15-20 in Civil Action No. 21-52.

[16]  Compl. [ECF 1] ¶¶ 21-31 in Civil Action No. 19-118.

[17]  *Id.* ¶ 24.

[18]  *Id.*

[19]  *Id.* ¶ 26.

PSMT claims that the USVI continues to collect the container tax;[20] PSMT seeks declaratory and injunctive relief in addition to a refund.[21]

The USVI seeks to dismiss PSMT's case under Rule 12(b)(1) on the grounds that the tax comity doctrine and the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, divest this Court of subject matter jurisdiction.[22]   The USVI also seeks dismissal under Rule 12(b)(6).[23]

## II.   LEGAL STANDARDS

A.   Standards of Review

1.   Rule 12(b)(1)

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).   In other words, "[s]tanding is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).   Rule 12(b)(1), which provides that a party may assert the defense of lack of subject matter jurisdiction by motion, is therefore the appropriate vehicle for challenging a plaintiff's standing to bring a claim in federal court.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   They are as follows:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical.   Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . .

---

[20]   *Id.* ¶ 31.

[21]   *Id.* at 6.

[22]   [ECF 11] at 2-4 in Civil Action No. 19-118.

[23]   *Id.* at 4-19.

> . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (citations and quotation marks omitted); *accord Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1147 (2013) ("To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.") (quotation marks omitted). Further, it is well settled that "[t]he party invoking federal jurisdiction bears the burden of proving standing." *Lujan*, 504 U.S. at 561.

Lastly, a challenge to a party's standing may either be facial or factual. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge under Rule 12(b)(1), like a Rule 12(b)(6) motion to dismiss for failure to state a claim, requires that the court "consider the allegations of the complaint as true" in its analysis. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen*, 549 F.2d at 891). In a factual challenge, on the other hand, the defendant attacks the factual bases for jurisdiction that are alleged in the complaint by presenting competing facts. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). As such, "the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891); *accord HWI Partners, LLC v. Choate, Hall & Stewart LLP*, 2013 WL 6493118, at *3, (D. Del. Dec. 11, 2013) ("Defendants' challenge to [plaintiff's capacity to sue] represents a factual attack on subject matter jurisdiction because it is based on underlying facts or evidence outside the complaint, which the court may consider.").

2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). A complaint must, under Federal Rule of Civil Procedure 8(a)(2), contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the complaint "must state enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted). Moreover, a court need not "accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

"In deciding a motion to dismiss [under Rule 12(b)(6)], the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff." *Dicesare v. Office of Children, Youth & Families*, 2012 WL 2872811, at *2 (W.D. Pa. July 12, 2012) (citing *U.S. Express Lines, LTD. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

B.   Constitutional Principles

    1.   Dormant Commerce Clause Principles

The Commerce Clause provides that "Congress shall have Power . . . to regulate Commerce with foreign Nations, and among the several States . . . ." U.S. Const. art. I, § 8.   In addition to the "affirmative grant of power to Congress, [] the Clause also has dormant or negative implications." *Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522, 1534 (3d Cir. 1993) (quotation marks omitted).   To wit, the so-called Dormant Commerce Clause implicitly "limits the power of the States to erect barriers against interstate trade." *Id.* (quoting *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 35 (1980) (quotation marks omitted)); *accord Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, --- U.S. ---, 139 S. Ct. 2449, 2459 (2019) (noting that the Dormant Commerce Clause "prohibits state laws that unduly restrict interstate commerce").   *See also Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) ("The negative or dormant implication of the Commerce Clause prohibits state taxation . . . that discriminates against or unduly burdens interstate commerce.") (citations omitted).

"[B]ecause the Virgin Islands is an unincorporated territory, the entire Constitution does not apply to it of its own force." *Polychrome Int'l Corp.*, 5 F.3d at 1534 (citing *JDS Realty Corp. v. Gov't of V.I.*, 824 F.2d 256, 259 (3d Cir. 1987)).   Nevertheless, "Congress has comprehensive powers to regulate territories under the Territorial Clause, Art. IV, § 3, cl. 2, and [] Congress' Commerce Clause powers are implicit in that clause." *Polychrome Int'l Corp.*, 5 F.3d at 1534 (quotation marks omitted).   Thus, although the USVI is not governed directly by the Dormant Commerce Clause, it is subject to Dormant Commerce Clause principles through the Territorial

Clause, which expressly grants Congress the "power to prescribe all 'needful Rules and Regulations' for territories." *Polychrome Int'l Corp.*, 5 F.3d at 1534. In sum, "when territorial enactments affect interstate or foreign commerce—a subject over which Congress has supreme control—those enactments must be scrutinized under Dormant Commerce Clause principles." *Id.*

### 2.  Tonnage Clause and Import-Export Clause Principles

"The U.S. Constitution prohibits states from 'lay[ing] any Duty of Tonnage' without the consent of Congress." *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 104 (3rd Cir. 2015) (quoting U.S. Const. art. I, § 10, cl. 3). Although the term "Duty of Tonnage" refers to the practice of taxing a ship according to "its tons of carrying capacity," *Maher Terminals, LLC*, 805 F.3d at 106, the Tonnage Clause is understood to prohibit states from imposing "all taxes and duties regardless of their name or form, and even though not measured by the tonnage of the vessel, which operate to impose a charge for the privilege of entering, trading in, or lying in a port," *id.* at 107 (quoting *Clyde Mallory Lines v. Alabama ex rel. State Docks Comm'n*, 296 U.S. 261, 265-66 (1935) (quotation marks omitted)). Its purpose was, *inter alia*, to "restrain states from obtaining 'geographical vessel-related tax advantages.'" *Maher Terminals, LLC*, 805 F.3d at 106 (quoting *Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 7 (2009)). Further, because "the Tonnage Clause was meant to protect vessels as vehicles of commerce,"[24] it applies to charges relating to a vessel's use of the port, as opposed to fees for other services.[25] "[T]o come within the Tonnage Clause's zone of interests . . . a plaintiff must allege an injury to a vessel as a vehicle of commerce,"

---

[24]  *Maher Terminals, LLC*, 805 F.3d at 107 (citing *Packet Co. v. Keokuk*, 95 U.S. 80, 84-85 (1877)).

[25]  *Maher Terminals, LLC*, 805 F.3d at 108 (citing *Packet Co.*, 95 U.S. at 85).

*Maher Terminals, LLC*, 805 F.3d at 108, or to representatives of a vessel, such as "an owner, ship captain, supercargo, or the passengers," *id.*[26] (citing *Passenger Cases*, 48 U.S. 283, 458 (1849)).

The Import-Export Clause provides that "[n]o State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws . . . ."  U.S. Const. art. I, § 10, cl. 2.  Like the Tonnage Clause, the Import-Export Clause "generally prohibits states from taxing imports and exports." *Maher Terminals, LLC*, 805 F.3d at 106.  The purpose of the Import-Export Clause is "to prevent states with convenient ports from taxing goods travelling in commerce at the expense of consumers in less-fortunately located states."  *Id.; accord Michelin Tire Corp. v. Wages*, 423 U.S. 276, 289-90 (1976) ("An evil to be prevented by the Import-Export Clause was the levying of taxes which could only be imposed because of the peculiar geographical situation of certain States that enabled them to single out goods destined for other States.  In effect, the Clause was fashioned to prevent the imposition of exactions which were no more than transit fees on the privilege of moving through a State.").

Finally, although the Tonnage Clause and Import-Export Clause of the Constitution do not apply directly to the Virgin Islands, it appears that their underlying principles—like the principles underlying the Dormant Commerce Clause—may well apply to the Virgin Islands.  In other

---

[26]  As the Third Circuit explained,

> [t]axes on certain people (the owner, captain, supercargo, and crew) directly impact where a vessel decides to make port by taxing those responsible for the vessel's navigation, and taxes on passengers will likely indirectly impact a vessel's decisions by reducing demand for passage on the vessel.  The interests of these people are the same as the interests of the vessels they occupy, so the Tonnage Clause prohibits taxes on them just as it prohibits taxes on the vessels themselves.

*Maher Terminals, LLC*, 805 F.3d at 108.

words, given that the Third Circuit has concluded that Commerce Clause powers are implicit in the Territorial Clause, it seems likely that the appellate court would similarly conclude that the Tonnage Clause and the Import-Export Clause powers are also implicit in the Territorial Clause, especially if they exist as corollaries to the Commerce Clause.[27]

## C.      The Tax Injunction Act and Tax Comity Doctrine

### 1.      The Tax Injunction Act

The TIA provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  The Supreme Court has held that the TIA also bars courts from awarding declaratory relief, but it has not addressed whether it similarly precludes damage awards.  *See California v. Grace Brethren Church*, 457 U.S. 393, 408-11 (1982).

When faced with the issue of whether the TIA applies to the Virgin Islands, the Third Circuit found, in *Pan American World Airways, Inc. v. Duly Authorized Government of the Virgin Islands*, that the express terms of the statute precluded its application to the Territory.  459 F.2d 387, 390-91 (3d Cir. 1972).  Recently, in *American Resort Development Association v. Government of the Virgin Islands*, the Third Circuit observed that "[n]othing in the past half-century has disturbed *Pan American*'s status as governing law."  848 F. App'x 79, 81 (3d Cir. 2021).  Thus, the TIA does not apply to the Virgin Islands.

---

[27]  *See Maher Terminals, LLC*, 805 F.3d at 109 ("Though the Tonnage Clause supports the Commerce Clause (as well as the Import-Export Clause), the Tonnage Clause is not the Commerce Clause.  The Tonnage Clause protects the free flow of commerce through a specific means—by protecting vessels operating as vehicles of commerce.); *id.* at 113 ("[T]he Tonnage Clause was added to the Constitution and so provided, along with the Import-Export Clause, a set of bars to complement the Commerce Clause barricade against state meddling in matters of national and foreign commerce.") (Jordan, J., concurring in part).

    2.    <u>The Tax Comity Doctrine</u>

Generally, "[t]he comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010). "Comity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* In such cases, there are "several factors a federal court might weigh in deciding whether to refrain, based upon comity, from deciding such a case." *Z&R Cab, LLC v. Phila. Parking Auth.*, 616 F. App'x 527, 531 n.8 (3d Cir. 2015). They are:

> [W]hether: (1) the challenged law concerned "commercial matters over which" the state "enjoys wide regulatory latitude"; (2) the suit requires adjudicating "any fundamental right or classification" to which heightened scrutiny applies; (3) the state courts are "better positioned than their federal counterparts to correct any violation" and provide a remedy; and (4) more than one potential remedy could adequately redress the alleged constitutional defect.

*Id.* (quoting *Levin*, 560 U.S. at 431-32.).

In *Pan American*, the Third Circuit stated that "no [] notions of federalism as underlie limitations on the power of the federal district courts to enjoin certain state actions are applicable to the territories." 459 F.2d at 391. In *Great Bay Condominium Owners Association, Inc. v. Government of the Virgin Islands*, however, the court considered whether the tax comity doctrine applied to the USVI and concluded that it did. 2018 WL 4690372, at *9 (D.V.I. Sept. 28, 2018). In *Great Bay*, the plaintiffs challenged the constitutionality of a territorial real property tax and time share fee. *Id.* at *1-2. In deciding to entertain the case, the court first explained that Congress may provide that Virgin Islands law be treated "with much of the independence of state law." *Id.* at *10 (quoting *Bluebeard's Castle, Inc. v. Gov't of V.I.*, 321 F.3d 394, 401 (3d Cir. 2003)). The court then observed that the area of property taxation in the Virgin Islands is

controlled by federal, as well as local, law.[28]   After considering Third Circuit authority, the *Great*

*Bay* court—relying primarily upon dicta in those cases—articulated for the first time a standard to

be applied when considering a challenge to a territorial tax law under the tax comity doctrine:

> [W]hen plaintiffs file suit seeking injunctive or declaratory relief or damages with respect to a local tax imposed on them by the Virgin Islands Government, they may only proceed in this Court if: (1) Congress has entered the field and the plaintiffs are seeking to enforce such a federally-created right, or (2) a plain, adequate, and complete remedy is not available in the local courts.

*Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *12.   The court reasoned that when

Congress "extended constitutional provisions to the Virgin Islands or otherwise passed a law which

has the same effect in the territory as it does in the states," default federalism doctrines apply.   *Id.*

In addition, the *Great* Bay court noted that in several cases the Third Circuit expressly interpreted

the 1984 amendment to the Revised Organic Act "to require deference to the local courts when an

Article III district court would similarly defer to a state court."[29]   *Id.* at *10 (citing *Edwards v.*

*HOVENSA, LLC*, 497 F.3d 355, 360-61 (3d Cir. 2007) (stating that there was "no reason not to

incorporate the federalism principles applicable through the circuit in our relationship with the

Virgin Islands courts.")).   Citing additional authorities applying federalism doctrines to the

Territory,[30] the court ultimately concluded that the tax comity doctrine applies to the Virgin

---

[28]   *Id.* at *11; *see also Berne Corp. v. Gov. of V.I.*, 120 F. Supp. 2d 528, 531 n.3 (D.V.I. 2000) (stating that "the subject of [the] lawsuit is a federal statute and not a local, territorial tax," referring to 48 U.S.C. § 1401a).

[29]   "The form of government in the Virgin Islands is defined by the Organic Act, originally passed by Congress in 1936, and subject to substantial revision in 1954, when it became known as the Revised Organic Act, and again in 1984.   The Revised Organic Act, 48 U.S.C. § 1541 *et seq.*, effectively serves as a constitution for the Virgin Islands."   *Bluebeard's Castle, Inc.*, 321 F.3d at 399, n.9 (citations omitted).

[30]   The *Great Bay* court noted that "[48 U.S.C.]§ 1613 makes the Erie doctrine and the Rules of Decision Act applicable to the District Court of the Virgin Islands."   *Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *10 (quoting *Edwards*, 497 F.3d at 360).   The court also discussed two cases in which the Third Circuit applied another "comity-based abstention doctrine[] to the Virgin Islands."   *Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *11.   In *Williams v. Government of the Virgin Islands Board of Medical Examiners*, 360 F. App'x 297,

Islands when a federal court is faced with a challenge to a territorial tax law.   *Great Bay Condo. Owners Ass'n, Inc.*, 2018 WL 4690372, at *12.

While the *Great* Bay court's reasoning on the issue of tax comity is persuasive, its decision was more in the nature of a prediction as to where the law might be in the future, rather than where it is at present.   Further, apart from the court in *Great Bay*,[31] no other court has discussed whether the tax comity doctrine applies to the Virgin Islands.   Although the USVI raised the issue of tax comity in the trial court in *Reefco*, neither that court (in ruling for the plaintiff) nor the Third Circuit (in its affirmance) made any mention of comity.

In addition, although the issue was before the Third Circuit in *American Resort Development Association*, the court stated that it "need not determine whether the tax comity doctrine applies."   848 F. App'x at 81 n.3.   That said, the Third Circuit's review of the *Great Bay* court's holding that the TIA arguably applied in the Virgin Islands in instructive here. Specifically, the Third Circuit found that the rationale behind the district court's decision was flawed: "[W]e will not interpret Congress's repeal of a federal statute governing local property taxes—or the report accompanying the same—to extend the TIA to the Virgin Islands by mere implication."   848 F. App'x at 81.   Mindful of the Third Circuit's caution not to extend decisional

---

301 (3d Cir. 2010) and *Kendall v. Russell*, 572 F.3d 126, 130 n.3 (3d Cir. 2009), the Third Circuit held that the *Younger* abstention doctrine applied to the Virgin Islands.   Under the doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), "[a]bstention is appropriate when: (1) there is a pending state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional challenges."   *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002).

[31]   In the companion case to *Great Bay*, the District Court noted that the tax comity issue in both cases was the same.   *Kimberly Stonecipher-Fisher Revocable Living Trust v. Gov't of V.I.*, 2018 WL 4704030, at *6 (D.V.I. Sept. 30, 2018), *aff'd sub nom, Am. Resort Dev. Assoc.*, 848 F. App'x at 81.   Employing issue preclusion, the District Court determined to exercise jurisdiction in that case as well.   *Kimberly Stonecipher-Fisher Revocable Living Trust*, 2018 WL 4704030, at *8.

principles to the Virgin Islands by "mere implication," this Court therefore declines to apply the

tax comity doctrine in these cases.

## II.    DISCUSSION

A.    Excise Tax Claims[32]

    1.    The Court has Subject Matter Jurisdiction Because Plaintiffs Have Properly Pled Standing

Plaintiffs have pled sufficient facts to establish their standing and thus this Court's subject

matter jurisdiction.    Plaintiffs allege that the USVI implemented 33 V.I.C. § 42 in an

unconstitutionally impermissible manner.    They allege that as a result, they paid an unlawful tax

and the USVI wrongfully deprived them of money between 2016 and 2019.    They further allege

that the deprivation is ongoing.    The alleged harm is therefore concrete, particularized, and

actual.[33]    Second, plaintiffs allege a causal connection between their injury and the conduct

complained of.[34]    Finally, if the Court finds in plaintiffs' favor and orders the USVI to issue the

refunds sought, plaintiffs' injury would be redressed.[35]    Accordingly, the Court recommends that

---

[32]    Plaintiffs argue, under the doctrine of offensive non-mutual collateral estoppel or issue preclusion, that the Court should not reconsider issues of law and fact that were previously resolved by the District Court and the Third Circuit in the *Reefco* litigation.    *See, e.g.*, [ECF 10] at 4-7 in Civil Action No. 21-52.    The USVI contends that the doctrine does not apply.    *See, e.g.*, [ECF 13] at 15-20 in Civil Action No. 21-52.    The Court need not address the parties' arguments, however, as the application of the doctrine is more appropriately considered at the merits stage.

[33]    *See, e.g.*, Compl. [ECF 1] ¶¶ 21-23 in Civil Action No. 21-52; [ECF 1-1] at 1 in Civil Action No. 21-52 (Copy of B&B's Excise Tax Claim Form 843 Ex-V.I. dated 12/16/2020 requesting refund of "illegal excise tax" totaling $116,260.95); *id.* at 2-24 (Copies of B&B's Excise and Container Tax Return Form 721VI demonstrating payment of excise tax from 2016-2018).

[34]    *See, e.g.*, Compl. [ECF 1] ¶¶ 8-24 in Civil Action No. 21-52.

[35]    The USVI argues at length that plaintiffs have not pled a "cognizable constitutional injury" because, according to the USVI, unless a plaintiff identifies similarly situated companies that were not subject to the excise tax, it fails to establish its standing to assert the claim.    *See, e.g.*, [ECF 8] at 3-6 in Civil Action No. 21-52.    However, the USVI appears to conflate the plaintiff's obligation to allege a concrete injury for standing purposes with its ultimate obligation to prove that injury.    *See Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 479 (3d Cir. 2018) (stating that the court's "standing inquiry must avoid any consideration of the merits beyond a screening for mere frivolity") (quoted in *Morton v. U.S.V.I.*, 2021 WL 6137867, at *3 (3d Cir. Dec. 29, 2021)).    Moreover, even the USVI appears

the USVI's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) be denied.

    2.    <u>Plaintiffs Have Adequately Pled a Claim Under Dormant Commerce Clause Principles</u>

Plaintiffs contend as follows: (1) 33 V.I.C. § 42, as originally enacted in 1959, imposed a territorial excise tax on goods imported to the Territory but not on goods produced locally;[36] (2) 33 V.I.C. § 42, as amended in 1984, imposed the territorial excise tax on goods produced within the Territory;[37] (3) notwithstanding the amendment, the Territory did not collect the excise tax on locally produced goods until 2019;[38] and (4) between 2016 and 2019, the USVI unlawfully collected the excise tax from plaintiffs on imported goods, "in violation of the Commerce Clause."[39]  PSMT's allegations are similar.[40]

The USVI contends that none of the plaintiffs states a claim under the Dormant Commerce Clause.  As to PSMT, the USVI argues that the claim must fail because "PSMT does not allege that, during the time period at issue, there was an in-territory substantially similar entity in competition with it who benefitted from not paying excise taxes."  [ECF 40] at 4 in Civil Action No. 19-118.  Similarly, as to the other plaintiffs, the USVI asserts that "Plaintiffs do not allege

---

to recognize that this argument bears more on the issue of whether plaintiffs have stated a claim under Rule 12(b)(6), than on Article III standing.  *See, e.g.*, [ECF 13] at 9 in Civil Action No. 21-52 ("Plaintiff has failed to state a claim in that it has not alleged that any in-territory commercial interest was favored, directly or indirectly, by the challenged application of the statute at Plaintiff's expense."); *see also* [ECF 47] at 3 n.1 in Civil Action No. 21-51 (acknowledging in the USVI's post hearing brief that the cases upon which it previously relied dealt mostly with challenges under Rule 12(b)(6)).

[36]  *See, e.g.*, Compl. [ECF 1] ¶ 8 in Civil Action No. 21-52.

[37]  *Id.* ¶ 10.

[38]  *Id.* ¶ 11.

[39]  *Id.* ¶ 22.  *See also id.* ¶¶ 11, 13.

[40]  Compl. [ECF 1] ¶¶ 7-10, 14, 15 in Civil Action No. 19-118.

that, during the time period at issue, there was an in-territory entity in competition with them who benefitted from not paying the excise tax that Plaintiffs were required to pay." *See, e.g.*, [ECF 47] at 6 in Civil Action No. 21-52. The Court does not agree that such allegations are required.

In *Reefco*, the District Court found that the "excise tax is imposed on certain items that are imported into the Virgin Islands [and that n]o excise tax is levied on similar items that are manufactured in the Virgin Islands." 2018 WL 4690366, at *7. As a result, the court held: "Any excise tax assessed under Section 42 was improperly assessed. Accordingly, Reefco is entitled to a refund of those taxes." *Id*. On appeal, the Third Circuit found that, although the statute was facially neutral, that excise taxes were not assessed against local manufacturers for over 30 years "is nothing short of a blatant 'preference for domestic commerce over [interstate] commerce.'" *Reefco Servs., Inc.*, 830 F. App'x at 85 (alteration in original). The appellate court concluded: "Local manufacturers were afforded a tax break not available to foreign and domestic importers. The resulting violation of the Commerce Clause is obvious . . . ." *Id.*

Here, the Court concludes that plaintiffs have adequately pled a claim that 33 V.I.C. § 42, as implemented between 2016 and 2019, unfairly discriminated against interstate commerce in violation of Dormant Commerce Clause principles. Not only do plaintiffs expressly reference the *Reefco* decisions in their complaints, but they state why they contend the excise tax is discriminatory and how they have been discriminated against. Nothing further is required.

B.    PSMT's Container Tax Claim

PSMT asserts the following: (1) the container tax, 33 V.I.C. § 75, expressly requires the Bureau of Internal Revenue to issue regulations governing its administration; [41] (2)

---

[41] Compl. [ECF 1] ¶ 21 in Civil Action No. 19-118.

notwithstanding the statutory language, the USVI has not promulgated any such regulations;[42] (3) PSMT regularly imports containers subject to the tax—these containers include goods subject to the excise tax and goods exempt from the excise tax;[43] (4) between 2016 to 2019, the USVI collected the container tax from PSMT on imported containers;[44] (5) PSMT sought refunds from the USVI, claiming the tax violated Commerce Clause, Tonnage Clause, and Import-Export Clause principles;[45] and (6) the USVI has not refunded the container tax or otherwise responded to PSMT's claim.[46]   Assuming for present purposes that PSMT has standing, PSMT nevertheless fails to state a claim under any of these principles.

Regarding PSMT's claim that the container tax violates Commerce Clause principles, PSMT alleges no facts to explain how this tax discriminates or otherwise violates these principles. Regarding PSMT's claim that the container tax violates Tonnage Clause principles, PSMT fails to allege an injury to any vessel or representative of a vessel.   *See Maher Terminals, LLC*, 805 F.3d at 108.   Thus, PSMT neglects to aver that it, as an importer of various consumer goods,[47] falls within the Tonnage Clause's zone of interests.   Finally, regarding PSMT's claim that the container tax violates Import-Export Clause principles, PSMT fails to specify whether the container tax is an impost or duty,[48] and fails to allege or even hint at how the tax violates the clause.

---

[42]   *Id.* ¶ 22.

[43]   *Id.* ¶ 24.

[44]   *Id.* ¶ 25.

[45]   *Id.* ¶¶ 26-28.

[46]   *Id.* ¶ 29.

[47]   *Id.* ¶¶ 1, 14.

[48]   "[I]mpost and duty are narrower terms than tax."   *U.S. v. Int'l Bus. Machs. Corp.*, 517 U.S. 843, 857 (1996) (citing *Michelin Tire Corp.*, 423 U.S. at 290-293).   Further, to determine whether the tax is an impost or duty,

## IV. CONCLUSION

Accordingly, the premises considered,

It is **RECOMMENDED** that the USVI's motions to dismiss be **DENIED** as to plaintiffs'

excise tax claims.

It is further **RECOMMENDED** that the USVI's motion to dismiss PSMT's container tax

claims be **GRANTED**, and that PSMT be granted leave to amend.

Any objections to this Report and Recommendation must be filed in writing within 14 days

of receipt of this notice.   Failure to file objections within the specified time shall bar the aggrieved

party from attacking such Report and Recommendation before the assigned District Court Judge.

28 U.S.C. § 636(b)(1); LRCi 72.3.


**Dated:**   March 10, 2022                S\ _____

                                                                **RUTH MILLER**
                                                                United States Magistrate Judge

---

courts must review the nature of the tax.   *Dep't of Revenue of Wash. v. Ass'n of Wash. Stevedoring Cos.*, 435 U.S. 734, 752 (1978) (citing *Michelin Tire Corp.*, 423 U.S. at 279, 290-294).   Specifically, courts must determine "whether the exaction offend[s] any of the three policy considerations leading to the presence of the Clause:

> The Framers of the Constitution thus sought to alleviate three main concerns . . .: the Federal Government must speak with one voice when regulating commercial relations with foreign governments, and tariffs, which might affect foreign relations, could not be implemented by the States consistently with that exclusive power; import revenues were to be the major source of revenue of the Federal Government and should not be diverted to the States; and harmony among the States might be disturbed unless seaboard States, with their crucial ports of entry, were prohibited from levying taxes on citizens of other States by taxing goods merely flowing through their ports to the other States not situated as favorably geographically.

*Id.* at 752-53 (quoting *Michelin Tire Corp.*, 423 U.S. at 285-286).