Case Nos. 22-2675, 22-2676, 22-2677, 22-2678, 22-2679, & 22-2680

# *In the United States Court of Appeals for the Third Circuit*

APEX CONSTRUCTION CO. INC.,
BLUEWATER CONSTRUCTION INC.,
MSI BUILDING SUPPLIES INC.,
UNITED CORPORATION,
IMPEX TRADING INTERNATIONAL INC.,
B&B MANUFACTURING INC.,
Appellants/Plaintiffs,
v.
UNITED STATES VIRGIN ISLANDS,
Appellee/Defendant.

ON APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
Case Nos. 3:21-cv-39, 3:21-cv-40, 3:21-cv-41, 3:21-cv-43, 3:21-cv-44, & 3:21-cv-52
Hon. Robert A. Molloy, District Judge, Presiding

––––––––––––––––––––––––––––––––––––––––––––––––––

## REPLY BRIEF FOR APPELLANTS

––––––––––––––––––––––––––––––––––––––––––––––––––

DiRuzzo & Company
401 East Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
954.615.1676 (Office)
957.827.0340 (Fax)

*Counsel for the Appellants*

Joseph A. DiRuzzo, III
jd@diruzzolaw.com
Daniel M. Lader
dl@diruzzolaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES.......................................................... ii

REPLY ARGUMENT ................................................................... 1

  I.  TAX COMITY IS INAPPLICABLE IN THIS CASE ...................................... 1

    A.  Tax Comity Does Not Apply in the Virgin Islands ....................................... 1

    B.  If Tax Comity Applies in General, it Should Not Apply Here ...................... 6

      1.  Tax Comity Should Not Apply Because of Reefco .................................... 6

      2.  Tax Comity Should Not Apply Because the Relief Sought is Only Monetary (i.e., Not Injunctive or Declaratory) ............................................. 7

      3.  Superior Court does not provide a plain, adequate, and Complete Remedy ................................................................................. 8

      4.  There is No Guarantee of Repayment........................................ 11

  II.  THE GVI SHOULD BE ESTOPPED FROM RELITIGATING *REEFCO*........................ 14

    A.  The Court Should Treat the Virgin Islands for What It Is – Neither a State, Nor A Federal Entity................................................................... 18

    B.  *Mendoza* Does Not Apply.......................................................... 19

    C.  Offensive Non-Mutual Collateral Estoppel's Prerequisites Have Been Satisfied ................................................................................. 19

CONCLUSION .......................................................................... 24

CERTIFICATE OF COMPLIANCE RE: WORD COUNT ................................... 25

CERTIFICATE OF COMPLIANCE RE: VIRUS CHECK.................................... 25

CERTIFICATE OF COMPLIANCE RE: E-BRIEF............................................ 26

CERTIFICATE OF SERVICE............................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Am. Resort Dev. Ass'n v. Gov't of the Virgin Islands*, 848 F. App'x 79 (3rd Cir. 2021) .... 3

*Benjamin v. Coughlin*, 905 F.2d 571 (2d Cir. 1990) .................................................... 16

*Bluebeard's Castle, Inc. v. Gov't of Virgin Islands*, 321 F.3d 394 (3d Cir. 2003) ....... 1, 18

*Brown v. Felsen*, 442 U.S. 127 (1979) ......................................................................... 21

*Cooper v. Comm'r*, 718 F.3d 216 (3d Cir. 2013) ......................................................... 18

*Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100 (1981) ................... 7, 8

*Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240 (3d Cir. 2013) ...................... 17

*General Motors Corp. v. Tracy*, 519 U.S. 278 (1997) .............................................. 23, 24

*Great Bay Condo. Owners Ass'n, Inc. v. Gov't of Virgin Islands*, 2018 WL 4690372
    (D.V.I. Sept. 28, 2018) ........................................................................................ 12, 13

*Hibbs v. Winn*, 542 U.S. 88 (2004) ................................................................................ 7

*In re Stevenson*, 615 Pa. 50 (Pa. 2012) .................................................................... 15, 16

*Jones v. Cannizzaro*, 2019 WL 2289470 (E.D. La. May 28, 2019) ............................... 17

*LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) ..................................................... 6

*Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010) .......................................................... 1

*Lewis v. United States*, 445 U.S. 55 (1980) ................................................................. 10

*Limtiaco v. Camacho*, 549 U.S. 483 (2007) ............................................................... 1, 2

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589 (2020) ...... 21

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) .................................................. 6

*Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547 (1990) ................................................ 10

*Milton S. Kronheim & Co. v. D.C.*, 91 F.3d 193 (D.C. Cir. 1996) ............................... 16

*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) .......................................................... 22

*Parrott v. Gov't of Virgin Islands*, 230 F.3d 615 (3d Cir. 2000) ................................... 18

ii

*Pernell v. Southall Realty*, 416 U.S. 363 (1974) ............................................................... 2

*Plaut v. Spendthrift Farm*, 514 U.S. 211 (1995) ........................................................ 21

*Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971) ........................................ 7

*Reefco Servs., Inc. v. Gov't of Virgin Islands*, 830 F. App'x 81 (3d Cir. 2020) ...... 6, 21, 23

*Simpson v. United States*, 435 U.S. 6 (1978) .................................................. 10

*Singleton v. Wulff*, 428 U.S. 106 (1976) ........................................................ 18

*State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947 (Alaska 1995) ...................... 15, 16

*Stewart Dry Goods Co. v. Lewis*, 287 U.S. 9 (1932) ........................................ 13

*Stewart Dry Goods Co. v. Lewis*, 7 F. Supp. 438 (W.D. Ky. 1933) ............................ 13

*Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180 (1997) ...................................... 10

*United States v. Dalm*, 494 U.S. 596 (1990) ........................................................ 7, 20

*United States v. Mendoza*, 464 U.S. 154 (1984) ........................................................ 14

*United States v. Territory of Virgin Islands*, 748 F.3d 514 (3d Cir. 2014) ...................... 20

*United States v. Williams*, 514 U.S. 527 (1995) ........................................................ 20

*Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, 834 F.3d 110 (1st Cir. 2016) .............. 13

*Whalen v. United States*, 445 U.S. 684 (1980) ........................................................ 2, 3

*Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App'x 527 (3d Cir. 2015)..... 3, 4

**Statutes**

33 V.I.C. § 1692 ........................................................................................................ 8

**REPLY ARGUMENT**

## I.     TAX COMITY IS INAPPLICABLE IN THIS CASE

### A.     Tax Comity Does Not Apply in the Virgin Islands

This Court should conclude that the tax comity doctrine does not apply to Article IV territories when the taxpayer asserts violations of the United States Constitution (e.g., Commerce Clause).  At its core, tax comity is intended to be "applicable in *state* taxation cases [to] restrain[] federal courts from entertaining claims for relief that risk disrupting *state* tax administration." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 417 (2010) (emphasis added).  *Cf. Bluebeard's Castle, Inc. v. Gov't of Virgin Islands*, 321 F.3d 394, 400 (3d Cir. 2003) ("In any event, principles governing the relations between the states and the federal government are not always applicable to the territories.").

But the Virgin Islands is not a state and that impacts the mode of this Court's analysis as demonstrated by various Supreme Court cases.

For example, the Supreme Court has held that "decisions of the Supreme Court of Guam, as with other territorial courts, are instructive and are entitled to respect when they indicate how statutory issues, including the Organic Act, apply to matters of local concern." *Limtiaco v. Camacho*, 549 U.S. 483, 492 (2007) (concluding that the debt-limitation provision in Guam's Organic Act was not a matter of "purely local

concern"). But it also noted that, "[o]n the other hand, the Organic Act is a federal statute, which we are bound to construe according to its terms." *Id.*

The Supreme Court applied the same rationale to a decision of the District of Columbia Court of Appeals when it interpreted provisions of the D.C. Code enacted by Congress. *See Pernell v. Southall Realty*, 416 U.S. 363, 368-69 (1974). And no deference is due when a constitutional issue before the court cannot be entirely separated from the statutory question. *See Whalen v. United States*, 445 U.S. 684, 688 (1980) (not deferring to District of Columbia Court of Appeals' interpretation of two criminal provisions of the D.C. Code passed by Congress because "the customary deference to the District of Columbia Court of Appeals' construction of local federal legislation is inappropriate with respect to the statutes involved for the reason that the petitioner's claim under the Double Jeopardy Clause cannot be separated entirely from a resolution of the question of statutory construction").

Furthermore, the Supreme Court has clarified that deference is "a matter of judicial policy, not a matter of judicial power" and distinguished that deference from the treatment of state court interpretation of state statutes:

> Acts of Congress affecting only the District, like other federal laws, certainly come within this Court's Art. III jurisdiction, and thus we are not prevented from reviewing the decisions of the District of Columbia Court of Appeals interpreting those Acts in the same jurisdictional sense that we are barred from reviewing a state court's interpretation of a state statute.

2

*Id.* at 677-78.

Synthesizing these cases, tax comity deference to territorial court interpretations of a federal provision—as a matter of judicial policy, rather than judicial power—is inappropriate when a statutory issue is not entirely separate from a federal constitutional issue. Such is the case here, as the Appellants' Commerce Clause claim is directly related (and inextricably intertwined with) the claim that the GVI applied 33 V.I.C. § 42 in an unconstitutional manner.

This conclusion is supported by the fact that this Court has expressly refrained from opining whether tax comity applies to the Virgin Islands. *See Am. Resort Dev. Ass'n v. Gov't of the Virgin Islands*, 848 F. App'x 79, 81 n. 3 (3rd Cir. 2021). While the Court could exercise its prerogative to conclude that tax comity writ large does not apply to the Virgin Islands, it could decide this case by concluding that tax comity does not apply to the unique facts presented here. *See* discussion *infra*. Regardless of the analytical path this Court chooses, it should conclude that the decision below was erroneous.

The GVI relies on the trial court's citation to this Court's decision in *Z & R Cab, LLC v. Philadelphia Parking Auth.*, 616 F. App'x 527 (3d Cir. 2015). But a close inspection *Z & R* shows an important difference to this case. In *Z & R* "the fact that the *state court has already ruled on the constitutionality* of the PAL, which governed a

commercial activity in a single city, *Levin* suggests that a federal court may wish to carefully weigh whether to intervene." *Id.* at 531 (emphasis added). Here, in stark contrast, in *Reefco* both the District Court and this Court as federal courts have already ruled on the unconstitutionality of the GVI's application of the excise tax law. Thus, as federal courts have already intervened, the reasons that ordinarily counsel abstention are noticeably absent here.

This fact makes all the difference and distinguishes all the cases that the GVI relies on as those courts viewed tax comity in a prospective manner (instead of the retrospective manner that this case presents). Simply stated, this Court has already ruled on the unconstitutionality of the GVI's application of its excise tax scheme and any attempt to put it back in the bottle via a forward-looking tax comity doctrine should be rejected.

As to the four-factor test set forth in *Z & R*, the Appellants submit that the third and fourth factors are absent here, i.e. (A) the territorial courts are not in a better position than the District Court and this Court to provide a remedy and (B) there is only one potential remedy at issue in this case. The GVI fails to acknowledge that the Appellants sought only legal relief in the form of a tax refund (including statutory interest and, to the extent permissible, attorney's fees and costs). *See* Apdx-090 (prayer for relief). The Appellants never sought equitable relief in the form of an injunction,

which the trial court failed to properly consider regarding the application to the third and fourth factors.

Unlike cases where a taxpayer claims that a statute violates the Constitution, here the taxpayers claimed, just as in *Reefco*, not that Section 42 was facially unconstitutional, but instead that it was being applied in an unconstitutional manner. This is significant because the constitutional violation at issue did not require the Virgin Islands Legislature to amend the statute. Thus, any assertion that local courts are more familiar with legislative preferences is a red herring because the Virgin Islands Legislature would not have to do anything in response to the case below (as evidenced by the fact that it did nothing in response to *Reefco*). The only conceivable action that the Virgin Islands Legislature would have to do in response to a federal trial court judgment (which for all intents and purposes is identical to a local trial court judgment) is authorize funding. Thus, the trial court erred, Apdx-26, when it concluded that an appropriation in response to a federal judgment implicates state/territorial legislative preferences. Accordingly, given the limited relief sought, i.e., a tax refund, the third and fourth factors detailed in *Z & R* favor the Appellants, not the GVI.

**B.    If Tax Comity Applies in General, it Should Not Apply Here**

**1.    Tax Comity Should Not Apply Because of *Reefco***

The GVI posits, notwithstanding that like cases should be decided alike, *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005), and that "[i]nconsistency is the antithesis of the rule of law[,]" *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996), that "Appellants are not asking this Court to apply precedent here." GVI Br. at 28. But *Reefco* is precedent (albeit non-precedential precedent), as precedent is "a legal decision or form of proceeding serving as an authoritative rule or pattern in future similar or analogous cases."[1] There can be no bona fide dispute that *Reefco* is a similar or analogous case to the consolidated case at bar. Thus, just as the taxpayer in *Reefco* was entitled to a tax refund so too should the taxpayers in this case be entitled to a tax refund. *See Reefco Servs., Inc. v. Gov't of Virgin Islands*, 830 F. App'x 81, 85 (3d Cir. 2020) (*Reefco II*) ("Because the GVI assessed the excise tax against Reefco in violation of the Dormant Commerce Clause, the District Court correctly held that Reefco is entitled to a refund.").

---

[1] https://www.dictionary.com/browse/precedent (last accessed April 7, 2023).

### 2. Tax Comity Should Not Apply Because the Relief Sought is Only Monetary (i.e., Not Injunctive or Declaratory)

The GVI argues that because, "while Appellants claim to only seek a refund, their prayers for relief contain a litany of requests, including a judgment in their favor, reasonable attorneys' fees and costs, and both pre- and post-judgment interest[,]" GVI Br. at 29-30, such implicates tax comity. The GVI is wrong. As noted above, the relief requested is entirely legal in nature (expressly not equitable). Thus, there is nothing that the Appellants ask for that would in any way, shape, or form, act to suspend or interfere with the collection of territorial taxes. The GVI has no rejoinder to the proposition that the proper way to challenge a territorial tax is to pay and then sue for a refund. *See Hibbs v. Winn*, 542 U.S. 88, 104 (2004) ("Congress directed taxpayers to pursue refund suits instead of attempting to restrain collections."); *Psaty v. United States*, 442 F.2d 1154, 1158 (3d Cir. 1971) (pay the contested tax); *United States v. Dalm*, 494 U.S. 596, 601–02 (1990) (timely file a claim for refund). That is exactly what the Appellants did in this case.

The GVI relies on *Fair Assessment* to buttress its tax comity argument, GVI Br. at 29, but that case was procedurally very different from this case. In *Fair Assessment*, the question presented was "whether a damages action may be brought under 42 U.S.C. § 1983 to redress the allegedly unconstitutional administration of a state tax system." *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 101 (1981).

In contrast, in this case the Appellants did not bring a Section 1983 case, instead they sought a refund expressly permitted pursuant to 33 V.I.C. § 1692 *after filing a claim for refund.* The timely filed claim for refund is significant as it is a statutory prerequisite for the Virgin Islands waiver of sovereign immunity under Section 1692. *See id.* ("No action or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund* or credit has been duly filed with the Director, ....") (emphasis added).

Thus, the problems the Supreme Court identified with Section 1983 tax cases, *see Fair Assessment*, 454 U.S. at 114 ("State tax collection officials could be summoned into federal court to defend their assessments against claims for refunds as well as prayers for punitive damages, merely on the assertion that the tax collected was willfully and maliciously discriminatory against a certain type of property."), are not present here. To state the obvious, the Appellants did not seek punitive damages, nor did they allege willful or malicious discrimination. This distinction is not of degree but of kind and takes this case out of *Fair Assessment*'s ambit.

### 3. Superior Court does not provide a plain, adequate, and Complete Remedy

Although the Appellants provided detailed evidence consisting of (i) local level

judiciary reports that detail the Superior Court's civil and criminal caseload, (ii) the District Court of the Virgin Islands' civil and criminal caseload, (iii) a relative comparison between the two trial level courts in the Virgin Islands, and (iv) an addendum demonstrating the source of the data and computations performed (which provided full transparency to allow the GVI and the Court to double-check the Appellants' math), the GVI fails to meaningfully grapple with these points. Indeed, the GVI does not even mention the Appellants' computation addendum once in its brief. And for good reason: the numbers do not lie and bear out what the legal community in the Virgin Islands already knows, i.e., that the Superior Court does not provide a plain, adequate, and complete remedy.

The GVI claims that the Appellants have "cherry-picked examples of lengthy Superior Court litigation." GVI Br. at 30. Presumably if the Appellants were incorrect the GVI would point to examples supporting its position. But the GVI fails to provide examples to counter the Appellants' argument and fails to cite to any evidence that contradicts the Appellants' arguments. That failure speaks volumes.

Finally, the GVI takes issue with Virgin Islands Legislature's amendment of 5 V.I.C. § 31, which provides for trial preferences. But the GVI fails to grapple with the legislative findings that formed the basis for Act 8486. Virgin Islands Senators Sarauw, Heyliger, and Joseph were Act 8486's sponsors. *See*

https://www.legvi.org/billtracking/Detail.aspx?docentry=29559 (last accessed April 8, 2023). When a senator sponsors a bill, his/her "statements are entitled to weight." *Lewis v. United States*, 445 U.S. 55, 63 (1980) (citing *Simpson v. United States*, 435 U.S. 6, 13 (1978)).

But the GVI totally ignores Senator Sarauw's statements (and the other Senators as well) that:

- there remains a large backlog of actions, despite the expansion of the territorial court system in recent years.

- "People should not be dying waiting to settle a civil matter."

- There is an unnecessary backlog in our courts.

This Court should give substantial deference to theses legislative findings. *See* Opening Br. at p. 26-29 (detailing legislative findings). *See also Metro Broadcasting, Inc. v. FCC*, 497 U.S. 547, 569, 579-81 (1990) (courts must pay close attention to the factfinding of Congress and must give great weight to the decisions of Congress regarding complex empirical questions) (cleaned up); *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180, 199 (1997) (the Supreme Court stressed the importance of "Congress' factfinding function" and declared that the Court "must give considerable deference, in examining the evidence, to Congress' findings and conclusions").

However, instead of addressing the findings of the Virgin Islands Legislature,

the GVI dismisses the Appellants' argument *in toto*, and asserts that the "Appellants intend § 31 to pull double duty for them, serving both as a symptom of local court dysfunction and a roadblock to local courts' proper functioning." GVI Br. at 31. The GVI is incorrect, as Section 31 was enacted in direct response to what the Virgin Islands Legislature found to be systemic, on-going, wide-ranging, problems at the Superior Court to the timely adjudication/resolution of cases. The situation could not be grimmer when the sponsor of Act 8486 stated (when arguing for why the passage of Act 8486 was necessary) that "[p]eople should not be dying waiting to settle a civil matter." While the GVI executive branch may take the position in litigation that the situation on the ground is acceptable, the legislative branch (as a co-equal branch of government) clearly has taken the contrary view and passed Act 8486, which the Appellants submit is *ipso facto* proof that the Superior Court does not provide a plain, adequate, and complete remedy.

Under these grim state-of-affairs of the Superior Court, tax comity must not apply; the decision below must be reversed, and the case remanded with instructions to exercise jurisdiction.

### 4.    There is No Guarantee of Repayment

The GVI paints a rosy picture of its financial position not by citing to record evidence, but instead to a self-serving affidavit of the Director Lee. *See* GVI Br. at 31

(citing to Lee affidavit). But an affidavit cannot be crossed examined, and when Director Lee and Director O'Neal were respectively cross-examined, they testified that (i) the witness was unaware of the amount corporations claimed in refunds in an average year, Apdx-261 (Tr. at 86), (ii) the witness had no idea how many corporate refunds remained unpaid for recent tax years, Apdx-264 (Tr. at 89), (iii) importantly, for these corporate taxpayers/Appellants, corporations do not receive their refunds according to the same prioritization protocol as individual taxpayers, Apdx-270 (Tr. at 95), (iv) the GVI prioritizes payroll and allotments to semiautonomous agencies over tax refunds, Apdx-221, 228 (Tr. at 46, 53), (v) the tax refund backlog has increased to $80 million, Apdx-272-73 (Tr. at 97-98), and (vi) judgments awarding tax refunds are subject to the availability of funds, Apdx-239-40, 269 (Tr. at 64-65, 94).

Once again, the GVI fails to address these inconvenient facts, instead arguing that the Appellants did not address the *Levin* factors. GVI Br. at 31. But, as the district court noted in *Great Bay*, "[t]he Supreme Court has also held that when a plaintiff challenges a tax, principles of comity (the 'tax comity doctrine') prevent district courts from granting injunctive or declaratory relief or awarding damages when the state provides remedies that are 'plain, adequate, and complete.'" *Great Bay Condo. Owners Ass'n, Inc. v. Gov't of Virgin Islands*, 2018 WL 4690372, at *3 (D.V.I. Sept. 28, 2018) (citing *Fair Assessment*, 454 U.S. at 116). Whether a taxpayer can be

guaranteed of repayment is directly relevant to whether "a refund action is not a plain, adequate, and complete remedy." *Great Bay*, 2018 WL 4690372, at *16.

The *Great Bay* court justified its conclusion on two significant cases. The first case was *Stewart Dry Goods Co. v. Lewis*, 287 U.S. 9 (1932). In *Stewart*, the Supreme Court reversed and remanded to the trial court to determine whether the taxpayers "would be afforded a certain reasonably prompt and efficacious remedy." *Id.* at 10. Upon remand, the *Stewart* trial court concluded that, as "it is uncertain when [the taxpayers] would be paid, we feel constrained to hold that the remedy at law given by section 10 of the act does not afford that certainty necessary to repel equity jurisdiction." *Stewart Dry Goods Co. v. Lewis*, 7 F. Supp. 438, 440 (W.D. Ky. 1933).

The second case was *Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, 834 F.3d 110 (1st Cir. 2016). In *Wal-Mart*, the trial court enjoined the enforcement of a Puerto Rican law after concluding that it (similar to *Reefco*) violated, *inter alia*, the Commerce Clause. *Id.* at 112. The First Circuit affirmed, concluding that the taxpayer "lacked a plain, speedy, and efficient remedy in the Puerto Rico courts" due to both the time it would take for repayment and other governmental "priorities putting other debts ahead of taxpayer debt." *Id.*

Thus, in all events, whether the taxpayers in this case can get a timely tax refund is relevant to *Levin* and whether a refund action provides a plain, adequate, and

complete remedy.  As discussed above, it does not, and the decision below to the contrary was entered in error.

## II.     THE GVI SHOULD BE ESTOPPED FROM RELITIGATING *REEFCO*

The GVI asserts that there are two major policy reasons that justify why non-mutual collateral estoppel should not be applied against a government.  The first is that, "[u]nlike a private litigant who generally does not forgo an appeal if he believes that he can prevail, the Solicitor General considers a variety of factors, such as the limited resources of the Government and the crowded dockets of the courts, before authorizing an appeal." GVI Br. at 35 (citing *United States v. Mendoza*, 464 U.S. 154, 161 (1984)).  The second is that, "[i]n addition to those institutional concerns traditionally considered by the Solicitor General, the panoply of important public issues raised in governmental litigation may quite properly lead successive administrations of the Executive Branch to take differing positions with respect to the resolution of a particular issue." *Id.*

Both considerations are absent here.

*First*, the GVI did in fact appeal *Reefco* to this Court.  Thus, there was not only a trial court judgment, but that judgment was affirmed on appeal.  Accordingly, the fact that a government might choose to not appeal a decision (for whatever reason, resulting in the end of the litigation) cannot justify the inapplicability of non-mutual

collateral estoppel in this case as the GVI appealed *Reefco* to this Court (and lost). Simply stated, the GVI cannot rely on the fact that governments may not take an appeal for a host of reasons to justify not being bound to a decision of an appeals court when the GVI already elected to take an appeal.

*Second,* the GVI has demonstrated no change in position regarding the entitlement of Virgin Islands taxpayers to obtain refunds of excise taxes paid when the GVI was applying its excise tax regime in an unconstitutional manner. This is not the case where different administrations have taken radically different litigating positions. To the contrary, the GVI administrations have been entirely consistent in their respective positions – Virgin Island taxpayers are not due a refund.

Thus, both rationales cut against the GVI's arguments and support the Appellants' commonsense position that the GVI should be estopped from relitigating *Reefco*.

*Finally,* the GVI candidly acknowledges that various courts in the country have not allowed non-mutual collateral estoppel to be used against state governments. *See* GVI Br. at 37 (citing *State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947 (Alaska 1995); *In re Stevenson*, 615 Pa. 50, 68, n. 8 (Pa. 2012)). The Alaska Supreme Court "decline[d] to adopt the *Mendoza* exception which would preclude in all cases, the offensive use of collateral estoppel against the State. The exception to this doctrine which the

*Mendoza* court created was one especially fashioned for the federal government as a litigant." *United Cook*, 895 P.2d at 951. The Alaska Supreme Court found that all three *Mendoza* factors weighed in favor of holding that non-mutual collateral estoppel does not apply against the State of Alaska. *Id.* at 951-52. In particular,

> the State's attempt to equate the functions of Alaska's Attorney General with those of the United States Solicitor General does not withstand scrutiny. Unlike the Solicitor General, Alaska's Attorney General essentially litigates in a single jurisdiction and is faced with a much smaller volume of litigation. Consequently, the need to authorize appeals of only the strongest cases is not as compelling as it is in the diverse federal judicial system.

*Id.* at 952.

And other jurists have reached the same conclusion as the Alaska Supreme Court. *See In re Stevenson*, 615 Pa. 50, 40 A.3d 1212, 1222 n.8 (2012) (declining to extend "the *Mendoza* doctrine" to state governments); *Benjamin v. Coughlin*, 905 F.2d 571, 576 (2d Cir. 1990) (distinguishing *Mendoza* and permitting the use of nonmutual collateral estoppel against a state agency); *Milton S. Kronheim & Co. v. D.C.*, 91 F.3d 193, 209 (D.C. Cir. 1996) (LeCraft Henderson, *J.*, dissenting) ("No legitimate public policy would be served by immunizing the District from nonmutual offensive collateral estoppel here.... But if the District receives an adverse district court decision, it can appeal to this Court, and an adverse decision by this Court will bind the District in future litigation irrespective of the applicability of nonmutual offensive collateral

estoppel: principles of *res judicata* and estoppel will bar the District from relitigating the issue with the same party; and *stare decisis* should ordinarily preclude the District from relitigating the issue with a different party [.]") (cleaned up); *Jones v. Cannizzaro*, 2019 WL 2289470, at *6 (E.D. La. May 28, 2019) ("Further, the Fifth Circuit has not extended the holding in *Mendoza* to state or local governments, and this Court therefore declines the invitation to do so here.").

These considerations apply equally (if not more so) to the GVI, as the Virgin Islands is smaller in land mass, population, and the concomitant volume of litigation.

\*\*\*

Acknowledging the infirmity of its position, the GVI argues for the very first time that

> to prevent any future litigant from arguing, like Appellants have here, that the USVI failed – in its first and last opportunity – to litigate this issue, we assert that: (1) this Court should treat the USVI as it would a state for purposes of ONMCE, hold *Mendoza* applies to the USVI, and reject ONMCE's application here pursuant to *Mendoza*; (2) should this Court decide to treat the USVI as a federal entity, it should reject ONMCE's application here pursuant to *Mendoza*; and (3) should this Court decide not to reject ONCME's application pursuant to *Mendoza*, it should still deny Appellants [sic] requests here because the doctrine's prerequisites have not been satisfied.

GVI Br. at 38.

The GVI failed to raise these arguments below and, as a result, it has waived them. *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013)

("We generally refuse to consider issues that the parties have not raised below.") (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.")).

Notwithstanding this objection, and in an abundance of caution, the Appellants address these newfound arguments *infra*.

### A.     The Court Should Treat the Virgin Islands for What It Is – Neither a State, Nor A Federal Entity

The Virgin Islands is an insular area of the United States; it is classified as an unincorporated territory by 48 U.S.C. § 1541(a), and as an Article IV Territory the Virgin Islands is not a sovereign in our system of government.   Indeed, "the constitutional relationship between the territories and the federal government remains unified: in a federal Territory and the Nation, as in a city and a State, there is but one system of government, or of laws operating within its limits. City and State, or Territory and Nation, are not two separate sovereigns to whom the citizen owes separate allegiance in any meaningful sense, but one alone." *Parrott v. Gov't of Virgin Islands*, 230 F.3d 615, 623 (3d Cir. 2000) (cleaned up).  *See also Cooper v. Comm'r*, 718 F.3d 216, 219 (3d Cir. 2013) (the Virgin Islands lacks independent sovereign power, instead all power originates from Congress). Consequently, "principles governing the relations between the states and the federal government are not always applicable to the territories." *Bluebeard's Castle*, 321 F.3d at 400.

18

Accordingly, this Court must, consistent with how it has treated the Virgin Islands in the past, take a nuanced and fact-intensive analysis of the Virgin Islands' unique location in our constitutional design. In other words, the state versus federal dichotomy is inapt for an Article IV Territory. Taking a nuanced view, the Court should treat the Virgin Islands as neither a state nor the federal government for collateral estoppel purposes; instead, the Virgin Islands is *sui generis* (and unable to be pigeon-holed into a facile state-federal dichotomy) and should neither be treated like a state nor the federal government.

### B.      *Mendoza* Does Not Apply

Regardless of how this Court characterizes the Virgin Islands for collateral estoppel purpose, in all events the Court should conclude that *Mendoza* does not apply to this case. *See* discussion *supra* (regarding why the GVI should be precluded from relitigating *Reefco*, why *Mendoza* should not apply to the Virgin Islands, and the various court decisions to not apply *Mendoza* to state governments).

### C.      Offensive Non-Mutual Collateral Estoppel's Prerequisites Have Been Satisfied

The GVI asserts that the Appellants could have joined the *Reefco* action. Once again, the GVI is wrong.

Appellants needed to file their respective claims for refund, and then wait the six-month statutory period before bringing suit as required under 33 V.I.C. § 1692.

And the failure to either file a claim for refund or wait the six-month period results in the non-waiver of sovereign immunity and the dismissal of a premature action under Fed. R. Civ. P. 12(b)(1). *See Dalm*, 494 U.S. at 602 ("unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court."); *United States v. Williams*, 514 U.S. 527, 533 (1995) (tax refund claims require administrative exhaustion); *Cash v. United States*, 725 F. App'x 171, 173–74 (3d Cir. 2018) ("The Code further provides that the taxpayer must wait six months to initiate a suit for refund, unless the IRS decides the administrative claim earlier.").

Accordingly, once the Appellants had complied with Section 1692's statutory requirements, they would have had to move to intervene under Fed. R. Civ. P. 24, which they would have been unable to do because the application would not have been timely, nor would they be able to assert that their interests were not being adequately represented. *See United States v. Territory of Virgin Islands*, 748 F.3d 514, 519 (3d Cir. 2014) (discussing the four intervention factors). Thus, the GVI's assertion that the Appellants could have joined *Reefco* is belied by the statutory and procedural requirements (which the GVI conveniently makes no mention of).

Additionally, tax comity was decided in *Reefco*. As noted in the Appellants' opening brief, the GVI raised tax comity in *Reefco*. *See* Apdx-222 (GVI briefing citing to both *Levin* and *Fair Assessment*); Apdx-044 (R&R acknowledging that the GVI raised tax comity in *Reefco*). The fact that tax comity was not mentioned in an opinion does not mean that it was not decided, rather, it means that the argument did not merit discussion. *Accord Reefco II*, 830 F. App'x at 85 ("The resulting violation of the Commerce Clause is obvious and the GVI's claims to the contrary do not merit further discussion.").

To that end, claim preclusion, or *res judicata*, prevents parties from raising claims for relief or defenses to claims for relief that could have been raised in prior litigation, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020), even if such claims were never actually litigated in the prior case, *see Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("*Res judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, *regardless of whether they were asserted or determined in the prior proceeding*.") (emphasis added). A prior decision must have been on the "merits" but that requirement does not mean each claim had to be specifically addressed by the court. *See Plaut v. Spendthrift Farm*, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat

a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits.").

Tellingly, the GVI posits that "[e]ach Appellants [sic] case must stand on its own facts, and the USVI must be allowed to challenge those facts, as well as the application of law to those facts, in its defense." GVI Br. at 42. And there, the GVI reveals its true desire – to litigate each taxpayer's claim for an excise tax refund notwithstanding that the GVI applied its excise tax regime in a blanket unconstitutional manner. In other words, to force every Virgin Islands taxpayer to incur the costs of hiring an attorney, filing a complaint, conducting discovery, and proceeding to summary judgment or trial, and then attempting to collect on the judgment (a daunting task indeed). But the GVI knows that only well-healed taxpayers will do this, effectively immunizing the GVI from the full consequence of its unconstitutional actions. This is not a fair and just way to administer a system of taxation, and exactly what the GVI wants. However, as the Supreme Court has stated, "[i]f men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021). Applying non-mutual offensive collateral estoppel in this case will force the GVI to turn square corners with all its taxpayers, which is only fair.

The GVI also makes the fanciful claim that "the issue sought to be precluded here is not the same as that involved in *Reefco*." GVI Br. at 44. Once more the GVI is wrong. The issue was, and has always been, "that the Virgin Islands excise tax statute – 33 V.I.C. § 42 violated the Commerce Clause, [thus,] any excise tax assessed under Section 42 was improperly assessed[.]" Apdx-086. Indeed, each complaint references *Reefco* and states, the "Plaintiff now sues the Defendant for a refund of the excises that it paid to the Defendant during the years where the Defendant was interpreting and enforcing Section 42 in an unconstitutional manner." Apdx-086; 092; 098; 130; 136; 144. While it is true that *Reefco* did not expressly state that it applied to every taxpayer, the clear implication that it applied writ large is demonstrated by the fact that the District Court "declar[ed] the GVI's implementation of the excise tax unconstitutional[.]" *Reefco II*, 830 F. App'x at 85. As the GVI's implementation was territory wide, the decisions in *Reefco* implicate the taxpayers in this case.

Finally, the GVI asserts that *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), precludes the use of non-mutual offensive collateral estoppel. GVI Br. at 44. As an initial observation, *Gen. Motors* is readily factually distinguishable, as it addressed regulation of the natural gas industry. *See id.* at 288 ("Assessing these arguments requires an understanding of the historical development of the contemporary retail market for natural gas, to which we referred before and now turn in greater detail.").

Further, in referencing prior Supreme Court precedent, the High Court stated:

> On similar facts, we held in *Bacchus Imports*, ..., that in-state liquor wholesalers had standing to raise a Commerce Clause challenge to a Hawaii tax regime exempting certain alcohols produced in-state from liquor taxes. Although the wholesalers were not among the class of out-of-state liquor producers allegedly burdened by Hawaii's law, *we reasoned that the wholesalers suffered economic injury both because they were directly liable for the tax and because the tax raised the price of their imported goods relative to the exempted in-state beverages.*

*Id.* at 287 (emphasis added, citation omitted). *Bacchus Imports* tracks the instant case as the Appellants were directly liable for the excise tax, *see* 33 V.I.C. § 42a, and the tax raised the price of the imported goods. Consequently, *Gen. Motors* does not support the GVI's position.

## CONCLUSION

For the foregoing reasons, and the reasons detailed in the Appellants' opening brief, the Court should conclude that (1) tax comity does not apply in the Virgin Islands (or, alternatively, that it does not apply in this case) and (2) that collateral estoppel applies against the GVI.

//

//

//

//

//

24

Respectfully Submitted,

/s/ Joseph A. DiRuzzo, III                              /s/ Daniel M. Lader
Joseph A. DiRuzzo, III                                  Daniel M. Lader
Florida Bar No. 0619175                                 Florida Bar No. 1004963
DIRUZZO & COMPANY                                       DIRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400                     401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301                                Ft. Lauderdale, FL 33301
954.615.1676 (Office)                                   954.615.1676 (Office)
954.827.0340 (Fax)                                      954.827.0340 (Fax)
jd@diruzzolaw.com                                       dl@diruzzolaw.com

Dated April 17, 2023                                    *Attorneys for the Appellants*

## CERTIFICATE OF COMPLIANCE RE: WORD COUNT

Pursuant to Fed. R. App. P. 32(g)(1), counsel certifies that this brief is in compliance with the 6,500 typed-volume limitation of Rule 32(a)(7)(B)(ii). The instant brief is 5,753 words in length. The brief has been prepared using Microsoft Word, Goudy Old Style font in 14 point.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

## CERTIFICATE OF COMPLIANCE RE: VIRUS CHECK

Counsel also certifies that he has performed a virus scan on the E-Brief using Microsoft Defender Antivirus software.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

25

## CERTIFICATE OF COMPLIANCE RE: E-BRIEF

Counsel hereby certifies that the text of the E-Brief and the text of the hardcopy briefs are identical.

<u>/s/ Joseph A. DiRuzzo, III</u>
Joseph A. DiRuzzo, III

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I caused:

1.     Pursuant to Local Appellate Rule Misc. 113.14, an electronic original copy of the brief to be filed via ECF.  Seven (7) paper copies of the brief will be delivered in five business days via USPS to the Clerk, United States Court of Appeals for the Third Circuit, 601 Market Street, Philadelphia, PA, 19106.

2.     An electronic copy to Michael R. Francisco, Assistant Attorney General, V.I. Department of Justice, 34-38 Kronprindsens Gade, GERS Building, 2nd Floor, St. Thomas, V.I. 00802.

Pursuant to Fed. R. App. P. 25(c)(1)(D), Local Appellate Rule 25.1(b), and Local Appellate Rule Miscellaneous Rules 113.2(c) and 113.4(a) a courtesy paper copy of the brief will be mailed via United States Postal Service to the above address.

<u>/s/ Joseph A. DiRuzzo, III</u>
Joseph A. DiRuzzo, III